MILWAUKEE COUNTY, Plaintiff-Appellant, V. DEPART-
MENT OF INDUSTRY, LABOR & HUMAN RELATIONS,
and another, Defendants-Respondents.

*No. 75–555. Argued October 4, 1977.—*
*Decided November 1, 1977.*
(Also reported in 259 N. W. 2d 118.)

446

For appellant there was a brief by *Robert P. Russell*, corporation counsel, *David J. Siler*, assistant corporation counsel and oral argument by *A. Frank Putz*, assistant corporation counsel.

For respondent the cause was argued by *James L. Pflasterer*, attorney, with whom on the brief were *Uclair W. Brandt*, chief counsel and *David A. Pearson*, assistant chief counsel.

ABRAHAMSON, J. The issue is whether a claimant is eligible for unemployment benefits under sec. 108.04 (1) (f), Stats., upon job termination caused by her failing a professional licensing examination. The trial court confirmed a decision of the Department of Industry, Labor and Human Relations (DILHR) finding the claimant eligible for benefits. We affirm the trial court's judgment.

There is no dispute regarding the facts of this case. Edna Phillips had a two-year associate degree in Nursing and received a temporary permit from the State Board of Nursing to allow her to work until she passed her examination for certification as a registered nurse. Ms. Phillips failed two of the five parts of the examination, her temporary permit was revoked, and her employment was terminated on September 30, 1974.[1] Ms. Phillips testified that she studied for the examination from the time she finished school, in May, until it was given in July and that she intended to take the examination again the next time it was given.[2]

Sec. 108.04 (1) (f), Stats., provides:

"If an employe is required by law to have a license, issued by a governmental agency, to perform his customary work for an employer, the employe shall not be eligible for benefits from the employer's account where the employe's employment was suspended or terminated because his license has been suspended, revoked or not renewed *due to his own fault,* until he has a valid license to perform such work." (Emphasis added.)[3]

Milwaukee County's position is that a person's failure to pass an examination is as a matter of law "due to her own fault" and that under sec. 108.04 (1) (f), Stats.,

[1] Sec. 441.08, Stats.; sec. N4.06, Board of Nursing, Admin. Code.

[2] Phillips testified that the licensing test lasted two days and had five parts, of which she passed three; she studied for the test from May 28, 1974, her date of graduation, until the beginning of the test on July 23, 1974; she purchased "evaluation books" to help her study for the exam, and she spent "at least two hours a day" studying for it; she was "quite nervous, shook up over the whole thing," but she did her best to pass it.

[3] Sec. 108.04(1) (f), Stats., is part of the availability for work section of the unemployment compensation law. Generally, a claimant must be available for work in order to collect benefits. Thus sec. 108.04(1) (f), Stats., states that an individual is not available for work when through his or her own fault a license is not obtained and a job is terminated.

the person is ineligible for benefits when such failure results in loss of a license.

The facts of the case present a narrow issue because of a crucial finding of fact made by the appeal tribunal and adopted by DILHR, namely that the employee prepared to the best of her ability and that she made a conscientious effort to pass the examination. The examiner also stated as a "finding of fact" that Phillips' permit had not been suspended, revoked, or not renewed due to her own fault.[4] The trial court accepted these findings of fact, and neither party on appeal challenges the finding that the employee was conscientious in preparing for the examination.[5]

The issue then becomes whether the word "fault" in sec. 108.04(1)(f), Stats., is to be construed as meaning failure or volition on the part of the employee (as contended by the County) or as meaning conduct that is blameworthy, worthy of censure, or negligent (as contended by DILHR).

Sec. 108.02(21), Stats., is a legislative attempt to facilitate statutory interpretation,[6] and provides as follows:

[4] The finding of fact made by the appeal tribunal and adopted by the department reads:

"The employe studied and prepared for the required examination to the best of her ability. She made a conscientious effort to pass the examination. Her eligibility for unemployment benefits cannot be suspended under section 108.04(1)(f) of the statutes because her permit to continue as a registered nurse was not suspended, revoked or not renewed due to her own fault."

[5] This court has held that factual findings cannot be disturbed on appeal to this court or trial courts unless unsupported by credible evidence on the record as a whole. *Vocational Tech. & Adult Ed. Dist. 13 v. ILHR Dept.*, 76 Wis.2d 230, 237, 251 N.W.2d 41 (1977).

[6] *See also* sec. 990.01(1), Stats., which provides:

"990.01 Construction of laws; words and phrases. In the construction of Wisconsin laws the words and phrases which follow

"(21) UNDEFINED TERMS. Any word or phrase used in this chapter and not specifically defined herein shall be interpreted in accordance with the common and approved usage thereof and in accordance with other accepted rules of statutory construction. . . ."

Our first task then is to determine the "common and approved usage" of the word "fault" in the phrase "due to his own fault." The common and approved usage of words can be established by the definition of a recognized dictionary. *Estate of Nottingham*, 46 Wis.2d 580, 588, 175 N.W.2d 640 (1970); Sands, 2A Sutherland on Statutes and Statutory Construction, secs. 47.28–47.30 (4th ed. 1973). Webster's Third New International Dictionary has several definitions of "fault" many of which incorporate a concept of blameworthiness or moral transgression. Counsel have also properly cited to legal definitions of the word "fault" to establish the common and approved usage. *Wood County v. Board of Vocational, T & A Ed.*, 60 Wis.2d 606, 614, 211 N.W.2d 617 (1973). Some legal definitions indicate a defect or failing signifying failure of duty, bad faith or mismanagement,[7] and others indicate that "fault" is not limited to conduct

---

shall be construed as indicated unless such construction would produce a result inconsistent with the manifest intent of the legislature:

"(1) GENERAL RULE. All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning."

*See also* Dickerson, *The Interpretation and Application of Statutes*, C. 14 Legislative Control of How Courts Read and Apply Statutes (1975).

[7] *See, e.g.*, 35 CJS *Fault*, p. 960; *In re Mills Unemployment Case v. Unempl. Comp. Board of Rev.*, 164 Pa. Super. 421, 439, 65 A2d 436 (1949); *Daniels v. Pa. Unempl. Comp. Board of Rev.*, 10 Pa. Commw. Ct. 241, 309 A.2d 738, 741 (1973).

which is culpable or wrongful.[8] It appears as if both parties can find support for their construction of the word "fault" in the common and approved usage of the word. Such a result is not too surprising since we recognize that a word can have different meanings. Thus the legislature has prescribed in sec. 108.02(21), Stats., that the word fault be interpreted not only in accordance with common and approved usage but also in accordance with "other accepted rules of statutory construction."

There are many "accepted rules of statutory construction," and not all the rules lead to the same conclusion.[9] The parties have urged several rules of statutory construction upon us, and we shall examine each of them to determine the appropriate meaning of the word "fault."

A fundamental rule of statutory interpretation is that the "intent of the legislature is a controlling factor." *Safe Way Motor Coach Co. v. Two Rivers*, 256 Wis. 35, 40, 39 N.W.2d 847 (1949). This court has said that "the aim of all statutory construction is to discern the intent of the legislature. . . ."[10] *Green Bay Packaging, Inc. v. ILHR Dept.*, 72 Wis.2d 26, 35, 240 N.W.2d 422 (1976).

[8] *See, e.g.*, Black's Law Dictionary, p. 738 (4th ed. 1968); 81 CJS *Social Security*, sec. 220, p. 425; *Walter Bledsoe Coal Co. v. Review Board*, 221 Ind. 16, 46 N.E.2d 477 (1943); *Wolf's v. Iowa Employment Security Commn*, 244 Iowa 999, 59 N.W.2d 216 (1953).

[9] For an extensive—but not complete—list of canons of construction see Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are To Be Construed*, 3 Vand. L. Rev. 395 (1950).

[10] For a discussion of the existence of and discovery of legislative intent *see, e.g.*, Radin, *Statutory Interpretation*, 43 Harv. L. Rev. 863 (1930); Landis, *A Note on Statutory Interpretation*, 43 Harv. L. Rev. 886 (1930); Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527 (1947); *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U. S. 384 (1951); Sands, 2A

The intent of the legislature can sometimes be discerned from extrinsic aids. The legislative history of the law, which includes reports of committees and commissions which report to the legislature, can be valuable interpretive aids. Sands, 2A Sutherland on Statutes and Statutory Construction, secs. 48.09, 48.11, 48.12 (4th ed. 1973). DILHR calls our attention to the Council on Unemployment Compensation which submits its recommendations as to changes in the Unemployment Compensation Law to each session of the legislature and reports its views on any pending law relating to unemployment compensation to the proper legislative committee. Sec. 108.14(5) (a), Stats. This court has looked to comments made by the Advisory Council in conjunction with recommended changes in the law to determine or clarify legislative intent. *See, e.g., Western Printing & Lithographing Co. v. Industrial Comm.,* 260 Wis. 124, 130, 50 N.W. 2d 410 (1951).

Sec. 108.04(1) (f), Stats., was enacted by ch. 12, Laws of 1961. An Advisory Council note to the draft bill, 301S, stated:

"For instance, a truck driver loses his operator's license because of drunken driving off the job, he cannot draw benefits based on his truck driving job for unemployment while his license is suspended."

DILHR's brief asserts that this example illustrates that some blameworthy or negligent act or omission which results in loss of an employment-related license was contemplated by the legislature.

Another rule of statutory construction put forth by DILHR is that "statutes should be so construed that no word or clause shall be rendered surplusage." *Cook*

Sutherland on Statutes and Statutory Construction, secs. 45.06–45.08 (4th ed. 1973).

*v. Industrial Comm.*, 31 Wis.2d 232, 239, 240, 142 N.W. 2d 827 (1966) ; Sands, 2A Sutherland, *supra,* sec. 46.06. DILHR argues, with merit, that the construction of "fault" urged by Milwaukee County renders the words "due to his own fault" superfluous. If mere failure to obtain or retain a license was intended to disqualify the employee for unemployment benefit purposes, the statute would be complete without the phrase "due to his own fault." Milwaukee County on oral argument countered this argument by urging us to follow the rule that words of a statute be interpreted according to their proper grammatical effect. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes are to be Construed,* 3 Vand. L. Rev. 395, 404 (1950). Milwaukee County argued that the phrase "due to his own fault" related only to the words "not renewed," and that the words "suspended" and "revoked" in sec. 108.04(1)(f), Stats., were not limited by the expression "due to his own fault." We believe this "grammatical construction" is strained.

Both parties rely on the rule of construction adopted by this court as a "cardinal rule in interpreting statutes," namely that "the purpose of the whole act is to be sought and is favored over a construction which will defeat the manifest object of the act." *Student Assn of UW-M v. Baum,* 74 Wis.2d 283, 294–5, 246 N.W.2d 622 (1976). *See also* Sands, 2A Sutherland, *supra,* sec. 45.09.

Milwaukee County, relying on the legislative declaration of public policy (sec. 108.01, Stats.), contends that the purpose of the unemployment compensation law, as interpreted by this court, is "to minimize the loss of income when an employee *involuntarily* is out of work through the *fault* or misfortune of his employer"[11] and

---

[11] *Roberts v. Industrial Commission,* 2 Wis.2d 399, 403, 86 N.W.2d 406 (1957). (Emphasis supplied.)

"to mitigate economic loss to the worker and his family who is committed to the labor market but is unable to find work because the *economy* has not provided enough jobs."[12]

On the other hand, DILHR cites other cases in which this court has interpreted the scope of the Unemployment Compensation Act more broadly, stating:

"In general, it is evident, in view of the public policy declaration (sec. 108.01) and other provisions in Ch. 108, Stats., that the intended purpose and object of providing for the payment of unemployment compensation is to cushion the effect of unemployment by a series of benefit payments to a worker in the event of his unemployment for a period of time."[13]

DILHR also notes that there are several sections of the Unemployment Compensation Act which permit an employee's eligibility for benefits for risks over which the employer has no control. These sections cast light on the legislative purpose.[14] Secs. 108.04 (7) (c) and 108.04 (1) (b) 1., Stats., for example,[15] permit eligibility for benefits following employment separations due to workers' physical incapacities to continue at their current jobs. Sec. 108.04(5), Stats., bars eligibility for benefits if the employee has been discharged for "misconduct," but permits eligibility for benefits following employment termination due to an employee's incompetency. This

[12] *Milwaukee Transformer Co. v. Industrial Commission,* 22 Wis.2d 502, 511, 126 N.W.2d 6 (1963). (Emphasis supplied.)

[13] *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 258, 296 N.W. 636 (1941).

[14] A general rule of statutory construction is that each part of a statute should be construed in connection with every other part so as to produce a harmonious whole. *Pelican Amusement Co. v. Town of Pelican,* 13 Wis.2d 585, 593, 109 N.W.2d 82 (1961); *Tews Lime & Cement Co. v. ILHR Dept.,* 38 Wis.2d 665, 672, 158 N.W.2d 377 (1968).

[15] *See also* sec. 108.04(7) (c), Stats.

court has said that misconduct is conduct evincing "wilful or wanton disregard of an employee's interests," "culpability," "wrongful intent or evil design . . . . [M]ere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute." *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 259, 296 N.W. 636 (1941). *See also Voc. Tech. & Adult Ed. Dist. v. ILHR Dept.,* 76 Wis.2d 230, 244, 251 N.W.2d 41 (1977). On the basis of these provisions, it is apparent, says DILHR, that the object of the statute as interpreted by this court, is not to limit eligibility for benefits to unemployment caused by the employer or the market place. Benefits may be paid for unemployment caused by factors over which the employer has no responsibility.

The last rule of statutory construction cited to us is the rule that great weight should be accorded to DILHR's interpretation of sec. 108.04(1)(f), Stats. We have repeatedly said that the construction of a statute is a question of law, and this court is not bound by the interpretation given the statute by an administrative agency. *Milwaukee v. WERC,* 71 Wis.2d 709, 714, 239 N.W.2d 63 (1976). Nevertheless we have recognized that "the construction and interpretation of a statute adopted by the administrative agency charged with the duty of applying the law is entitled to great weight." *Cook v. Industrial Comm.,* 31 Wis.2d 232, 240, 142 N.W. 2d 827 (1966). *See also* Sands, 2A Sutherland, *supra,* secs. 49.03–49.05.[16] This court does not redetermine

---

[16] "When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman,* 380 U.S. 1, 16 (1965).

every conclusion of law made by an administrative agency. ". . . If several rules, or several applications of a rule are equally consistent with the purpose of the statute, the court will accept the agency's formulation and application of the standard." *Milwaukee Transfer Co. v. Industrial Commn*, 22 Wis.2d 502, 510, 126 N.W.2d 6 (1964). *See also De Leeuw v. ILHR Dept.*, 71 Wis.2d 446, 449, 238 N.W.2d 706 (1976).

DILHR concedes that this court should not defer to an agency's interpretation which is unreasonable or at odds with the purpose of the law. Nevertheless DILHR maintains, for reasons already set forth herein, that its interpretation of the word "fault" as used in sec. 108.04 (1) (f), is reasonable, is consistent with the purpose of the unemployment compensation law, and should be accepted by this court.

Considering the accepted and common usage of the word fault and the application of the various—not always consistent—accepted rules of statutory construction, we are of the opinion that DILHR's interpretation of the word fault in sec. 108.04(1) (f), Stats., as referring to conduct which is blameworthy, worthy of censure or negligent, effectuates the purposes of the statute and is correct. The claimant in the case at bar should not be denied benefits for failing the licensing examination. Her failure was not "due to her own fault."

*By the Court.*—Judgment affirmed.