DAIRY EQUIPMENT COMPANY, a division of DEC International, Inc., Petitioner-Appellant,

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, State of Wisconsin, Respondent.

Supreme Court

*No. 77–504. Submitted on briefs March 5, 1980.—Decided April 1, 1980.*
(Also reported in 290 N.W.2d 330.)

For the appellant the cause was submitted on the brief of *Thomas P. Solheim* and *Ross & Stevens, S.C.,* of Madison.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *David C. Rice,* assistant attorney general.

COFFEY, J. This is an appeal from a judgment affirming an order of the Department of Industry, Labor and Human Relations (DILHR) directing the Dairy Equipment Company, the appellant, to "cease and desist" from discriminating against the respondent, Michael Wolf, on the basis of handicap, contrary to the Fair Employment Act. The company was also ordered to pay the respondent $348.16 in back wages.

The Dairy Equipment Company, the appellant, a division of DEC International, Inc., is a Wisconsin corporation located in Madison, Wisconsin, and engaged in the manufacture of stainless steel tank trailers for use in the transportation of liquids over public highways. On August 12, 1974, the appellant hired Michael Wolf as a truck assembler. The Dairy Equipment Company required their truck assemblers to install plastic foam

ribs and insulation on the external surface of the inner tanks of the steel tank trailers. As a condition of employment, the respondent was required to undergo a pre-employment physical examination. After the physical examination, the claimant was advised by the examining doctor that he could begin working for the company. He started the job that very same evening. Three days later, the company's personnel manager received the pre-employment medical physical report. The report stated that the respondent had only one kidney and that the other kidney had been surgically removed some time earlier. In his report, the doctor who examined Mr. Wolf stated that the respondent was acceptable for any kind of work for which he was qualified "unless removal of kidney has resulted in a condition which precludes employment as a company policy."

Based on the medical report, the appellant terminated the respondent's employment, even though the company considered Mr. Wolf to be a good worker and his work performance satisfactory. The company admitted that the respondent's employment would not have been terminated "if he had had two kidneys." In response to the company's action, the respondent, Mr. Wolf, filed a complaint with the Department of Industry, Labor and Human Relations (DILHR) alleging that the Dairy Equipment Company had discriminated against him on the basis of handicap in violation of secs. 111.31–111.37, Stats., the Fair Employment Act.

In an administrative hearing before an examiner, the company admitted that it had no formal policy with regard to the employment of persons having only one kidney. Mr. Ferguson, the company's personnel director, made the decision to terminate Mr. Wolf's employment. He stated that based on the medical report and his knowledge of the nature and risks involved in the truck

assembler's job.[1] it would be unreasonably dangerous for the claimant to continue to work for the company. Specifically, Mr. Ferguson testified that considering the height at which a truck assembler must work and the danger to an employee if he should fall from the top of the tanks and strike one of the "pipe-like" objects protruding from the steel tanks or on other equipment, he concluded that the job exposed the respondent to an undue risk of injury to his remaining kidney:

"Knowing the height of ten or twelve feet, the type of climbing that has to be done, the type of positions that have to be worked in, the inherent dangers if a person falls of hitting a projection or some type of equipment that might be along the aisle or along the floor, it was my opinion that was too great a risk, both from the humanistic standpoint of permanently injuring the man and from a cost standpoint to the company, and I believed it was an unreasonable risk that neither the man should take nor the company should take."

The company also admitted that it was concerned with the costs to the company of care and treatment of the respondent, if injured, under its workmen's compensation policy. Mr. Ferguson testified that a workers' compensation carrier had informed him that the costs of

---

[1] The record in this case establishes that part of the work of a truck assembler requires that the employee climb a ladder in order that he can work on the top of the tanks, 10–12 feet above a concrete floor. While no evidence was presented at the hearing to show that any workers had previously fallen while working on the top of such tanks, the Dairy Equipment Co., however, considered this job to be one of the three most "risky" jobs in their plant. The job was especially considered dangerous because of the fact that steel pipe-like objects protruded out from the tanks being worked on in such a way that a person who fell off the top of the tank would likely strike the protrusion and seriously injure himself. There was some evidence that the Dairy Equipment Co. had previously considered using harnesses to protect employees from falling, but the company found that idea to be impractical.

kidney treatments in 1974, including transplants, ranged from $20,000 to $30,000; that the price of a kidney dialysis machine was approximately $8,000; and that the individual hospital dialysis treatment cost approximately $250 per treatment at that time. In consideration of the risk and cost factors, Mr. Ferguson terminated the respondent's employment with the company, just three days after hiring.

The petitioner-appellant's second witness at the hearing was a Dr. James McIntosh, a urologist, who testified that a kidney can be damaged by trauma and the most common source of trauma injury to the kidney is a "sharp blow" to the kidney area from a "protruding structure." Moreover, he stated that a person with two kidneys could satisfactorily function with only one kidney, but if a person with only one kidney suffered the loss of his remaining kidney, he would either have to undergo regular dialysis treatment, a kidney transplant, or, if neither is successful, death would result. However, in response to a question from the hearing examiner, Dr. McIntosh admitted that a person with only one kidney was not any more likely to fall from heights than any other person, nor did it "interfere with any employment of the ordinary nature."

The respondent, on the other hand, testified that during his three-day tenure with the Dairy Equipment Company, he was not required to work on top of a stainless steel tank. However, he did climb part of the way up the ladder to hand insulation to another worker. Furthermore, he stated that he had never been refused employment or had his employment terminated because he had only one kidney, although he suspected one potential employer. On cross-examination, the claimant stated he never considered himself to be handicapped because he had only one kidney.

Following the hearing, the examiner determined that the respondent had performed his work satisfactorily

and he would not have had his employment terminated if he had two kidneys, therefore, he concluded:

1. that the complainant was handicapped within the meaning of secs. 111.31–111.37, Stats., and

2. that the company discriminated against the respondent on the basis of handicap in violation of the Wisconsin Fair Employment act.

Thus, the examiner ordered the company to "cease and desist" from discriminating against the respondent on the basis of his handicap and further ordered them to pay the respondent $348.16 in back pay.[2] The department adopted the hearing examiner's findings and order. Thereafter, the Dairy Equipment Company filed a petition for review in the circuit court requesting that the decision be reversed or modified on the following grounds:

"a. the agency has erroneously interpreted a provision of law;

b. the agency has exercised discretion outside the range of discretion delegated to the agency by law;

c. the agency has exercised discretion inconsistent with agency rule, an officially stated agency policy or a prior agency practice;

d. the agency has exercised discretion in violation of a constitutional or statutory provision;

e. the agency's action depends on a finding of fact that is not supported by substantial evidence in the record."

---

[2] It was established at the hearing that if the respondent had not been discharged by the Dairy Equipment Company he would nonetheless have been laid off on November 1, 1974 and his employment automatically terminated 12 months later pursuant to an applicable provision of the collective bargaining agreement then in effect. The hearing examiner thus concluded that Mr. Wolf was not entitled to be reinstated to the job.

The circuit court ruled that:

1. ". . . a handicap may be a condition which creates a perceived sensitivity to injury in the future, as well as a condition which may in the future cause difficulties in performing job duties. The absence of one kidney is clearly a handicap within the meaning of Wis. Stats., sec. 111.32(5) (f)."; and
2. "The respondent illegally discriminated against Mr. Wolf on the basis of handicap."

Therefore, judgment was entered "affirming the department's decision" and it is from this judgment that the Dairy Equipment Company appeals.

*Issues:*

1. Is the respondent, who has only one kidney, handicapped within the meaning of the Fair Employment Act, secs. 111.31–111.37, Stats.?
2. Did the Dairy Equipment Company unlawfully discriminate against the respondent on the basis of handicap, in violation of sec. 111.325, Stats., in terminating the respondent's employment?

On appeal the appellant-employer, the Dairy Equipment Company, contends that the claimant was not, as a matter of law, handicapped within the meaning of secs. 111.31–111.37, Stats. Secondly, and in the alternative, he claims that if the respondent is found by this court to be handicapped, this court should hold that the company did not unlawfully discriminate against him based on his handicap. The petitioner-appellant further contends that an employer may properly require, as part of the employment performance standards, that the job be performed in as safe a manner as possible, without danger of injury to the handicapped employee or his co-employees. Thus, the company contends that it could legally terminate the respondent's employment in this case because he could not adequately perform the job in a safe manner.

The Department of Industry, Labor and Human Relations found the respondent to be handicapped as a matter of law and that the company · had discriminated against him in terminating his employment for the reason that he only had one kidney at the time of employment, in spite of the fact that he had satisfactorily passed a pre-employment physical examination. Pursuant to ch. 227, Stats., the company petitioned for judicial review of the department's decision and the circuit court affirmed the decision.

This court has recited in *Bucyrus-Erie Co. v. ILHR Department*, 90 Wis.2d 408, 280 N.W.2d 142 (1979), referring to *Clintonville Transfer Line v. Public Service Comm.*, 248 Wis. 59, 76, 77, 21 N.W.2d 5 (1945), that "In reviewing an order of the circuit court affirming an order of an administrative agency the task of this court is to determine whether the circuit court erred in its determination."; According to the following standards established by sec. 227.20 for reviewing issues of law and fact:

" '(5) The court shall set aside or modify the agency action if it finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action, or it shall remand the case to the agency for further action under a correct interpretation of the provision of law.

" '(6) If the agency's action depends on any fact found by the agency in a contested case proceeding, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record.'

*Under subsection (5), questions of law are always reviewable by the court. Pabst v. Department of Taxa-*

*tion,* 19 Wis.2d 313, 322, 120 N.W.2d 77 (1963). The construction of a statute or the application of a statute to a particular set of facts is such a question of law. *Milwaukee County v. ILHR Dept.,* 80 Wis.2d 445, 455, 259 N.W.2d 118 (1977) ; *Dept. of Revenue v. Milwaukee Refining Corp.,* 80 Wis.2d 44, 48, 257 N.W.2d 855 (1977). Although the court is not bound by the agency's interpretation, some deference must be given the agency in those areas in which it has specialized knowledge and expertise. Sec. 227.20(10), Stats. The court will hesitate to substitute its judgment for that of the agency on a question of law if

" '. . . a rational basis exists in law for the agency's interpretation and it does not conflict with the statute's legislative history, prior decisions of this court, or constitutional prohibitions.' *Pabst, supra,* at 324." *Id.* at 416–17.

Thus, the circuit court and an appellate court should not upset the department's judgment concerning questions of law if there exists a rational basis for the department's conclusion. *Milwaukee County v. ILHR Department,* 80 Wis.2d 445, 455–56, 259 N.W.2d 118 (1977) ; *Dept. of Revenue v. Milwaukee Refining Corp.,* 80 Wis.2d 44, 48, 257 N.W.2d 855 (1977) ; *Pabst v. Dept. of Taxation,* 19 Wis.2d 313, 322, 120 N.W.2d 77 (1963).

In *Chicago, M., St. P. & P. RR. Co. v. ILHR Dept.,* 62 Wis.2d 392, 215 N.W.2d 443 (1974) this court held that:

"Whether the physical disorders suffered by the complainant constitutes a handicap is a conclusion of law. Errors of law are always reviewable by the reviewing court." *Id.* at 396.

The question we must decide, on appeal, is whether there is a rational basis for the department's conclusion and the court's finding that the respondent was in fact handicapped within the meaning of the Fair Employ-

ment Act. The department found it to be a handicap and the circuit court affirmed. Thus, the respondent's physical condition (the absence of one kidney) and the question of whether it is a handicap, within the meaning of the Fair Employment Act, has been determined to be a conclusion of law and, therefore, reviewable by an appellate court. *Chicago, M., St. P. & P. RR. Co. v. ILHR Dept., supra.*

The term "handicap" is not defined in the Fair Employment Act. In *Chicago, M., St. P. & P. RR. Co. v. ILHR Dept., supra,* this court considered the question of whether an employee with a history of asthma had a handicap for purposes of the Act. Since the term was not defined in the statute, this court, pursuant to sec. 990.01(1), Stats.,[3] defined the term handicap as:

" '. . . a disadvantage that makes achievement unusually difficult; esp.: a physical disability that limits the capacity to work.' "[4] *Id.* at 398.

This court has concluded that, in certain circumstances, a ". . . handicap as used in sec. 111.32(5), Stats., must be defined as including such diseases as asthma which make achievement unusually difficult." *Id.* at 398. In this case we are confronted with a different medical problem, a person whose activities are not limited as to his capacity to perform his work or the scope of employment and thus achievement is not *unusually difficult.*

---

[3] Sec. 990.01(1), Stats., reads as follows:

"**Construction of laws; words and phrases.** In the construction of Wisconsin laws the words and phrases which follow shall be construed as indicated unless such construction would produce a result inconsistent with the manifest intent of the legislature:

"(1) GENERAL RULE. All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning."

[4] This definition was derived from Webster's, *New International Dictionary,* 3rd edition, unabridged, 1961.

The respondent testified that as far as he knew, previous to his discharge by the Dairy Equipment Company, he was never definitely denied employment because he had only one kidney. Moreover, the company stipulated, at the administrative hearing, that the respondent performed his work satisfactorily. Because the respondent's condition does not make "achievement unusually difficult" the appellant, the Dairy Equipment Company, contends that the respondent is not handicapped.

However, we believe it is important to note that sec. 111.31(3), Stats.,[5] of the Fair Employment Act states that the act *"shall be liberally construed"* so as to accomplish its intended purpose:

"Wisconsin's Fair Employment Act is specifically focused upon employment discrimination and is designed to prevent discrimination which 'tends to deprive the victims of the earnings which are necessary to maintain a just and decent standard of living,' and causes 'strife and unrest.'" *Wisconsin Telephone Co. v. ILHR Department*, 68 Wis.2d 345, 368, 228 N.W.2d 649 (1975). *See also:* sec. 111.325, Stats.,[6] and *Ray-O-Vac v. ILHR Department*, 70 Wis.2d 919, 236 N.W.2d 209 (1975).

It is with this purpose in mind that we must determine whether the respondent in this case qualifies as handicapped within the meaning and intent of the Act.

---

[5] Sec. 111.31(3), Stats., reads as follows:

"111.31. **Declaration of policy.** (1) . . .

"(3) In the interpretation and application of this subchapter, and otherwise, it is declared to be the public policy of the state to encourage and foster to the fullest extent practicable the employment of all properly qualified persons regardless of their age, race, creed, color, handicap, sex, national origin or ancestry. This subchapter shall be liberally construed for the accomplishment of this purpose."

[6] Sec. 111.325, Stats., provides as follows:

"111.325. **Unlawful to discriminate.** It is unlawful for any employer, labor organization, licensing agency or person to discriminate against any employe or any applicant for employment or licensing."

In this case the circuit court ruled that the respondent (having only one kidney) was handicapped because he had ". . . a perceived sensitivity to injury in the future." We agree with the trial court's conclusion. It would be both ironic and insidious if the legislative intent in providing the protection of the Fair Employment Act were afforded to persons who actually have a handicap that makes "achievement unusually difficult" or limits their capacity to work, but the same protection is denied to those whom employers *perceive* as being handicapped. Congress recognized this situation and it included within the definition of the term "handicapped individuals" persons who are *regarded* as having an impairment:

". . . any person who (A) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (B) has a record of such an impairment, or (C) *is regarded as having such an impairment.*" (Emphasis supplied.) Rehabilitation Act of 1973,[7] 29 U.S.C., §706(6) (1976).

Moreover, the Washington Court of Appeals in *Barnes v. Washington Natural Gas Co.*, 22 Wash. App. 576, 591 P.2d 461 (1979) likewise sees the dangers in a perceived handicap and thus ruled that the application of the Washington state law against discrimination based on handicap ". . . should not be limited to those who actually have handicaps, excluding those who are discriminated against in the same way because they are only *thought* to have handicaps." (Emphasis supplied.) *Id.* at 465.

A review of the record in this case discloses that the Dairy Equipment Company perceived and/or regarded the respondent's condition as a handicap and terminated his employment solely for that reason. The company stipulated that: "[t]he Complainant's work performance

---

[7] Pub. L. No. 93–112, 87 Stats. 355.

was satisfactory. The Complainant would not have been terminated if he had two kidneys." The company discharged the respondent as they concluded that he could not work on top of the steel tanks for if he fell he might injure his remaining kidney. Thus, they perceived the respondent's physical condition as a handicap that limited his capacity to work.

Therefore, based upon the testimony, a reading of the record and the controlling case law, we hold that the respondent's perceived handicap (one kidney) must be interpreted as being within the meaning and intent of the Fair Employment Act. Thus, he was entitled to protection against discrimination based on this type of perceived handicap, pursuant to secs. 111.31 through 111.37, Stats.

Next, the appellant, the Dairy Equipment Company, contends that it did not unlawfully discriminate against the respondent on the basis of handicap when it terminated his employment. The company contends that its actions were exempt from the discrimination statutes because the duties of a truck assembler involved ". . . too great a risk, both from the humanistic standpoint of permanently injuring the man and from a cost standpoint to the company, and . . . it was an unreasonable risk that neither the man should take nor the company should take," pursuant to sec. 111.32(5)(f), Stats.,[8] which provides as follows:

---

[8] After the respondent was discharged and had filed his complaint but before DILHR's order, sec. 111.32(5)(f), Stats., was renumbered sec. 111.32(5)(f)1, Stats., and amended, effective May 27, 1976, to read as follows:

"(f) It is discrimination because of handicap:

"1. For an employer, labor organization, licensing agency or other person to refuse to hire, employ, admit or license, or to bar or to terminate from employment, membership or licensure any individual, or to discriminate against any individual in pro-

"111.32 . . . (5) (f). The prohibition against discrimination because of handicap does not apply to failure of an employer to employ or to retain as an employe any person who because of a handicap is physically or otherwise unable to efficiently perform, at the standards set by the employer, the duties required in that job." (1973).

It is the employer's burden to establish to a reasonable probability that the employee is physically and/or medically unable to efficiently perform the duties required in the work assignment. *Chicago, M., St. P. & P. RR. Co. v. ILHR Department, supra* at 398; *Bucyrus-Erie Co. v. ILHR Department, supra* at 424. The "ability to efficiently perform" involves more than having the physical strength and dexterity required:

"It embraces the ability to perform without a materially enhanced risk of death, or serious injury to the employee or others in the future and the statute must be so construed. We do not believe that the legislature when proscribing discrimination against those physically handicapped intended to force an employer into the position of aiding a handicapped person to further injury,

motion, compensation or in terms, conditions or privileges of employment unless such handicap is reasonably related to the individual's ability adequately to undertake the job-related responsibilities of that individual's employment, membership or licensure." (1975 Wis. Laws, ch. 275(18)). The circuit court ruled that the amended version was applicable. The general rule is that there is a presumption that statutes are to have only a prospective effect. *Estate of Pelishek*, 216 Wis. 176, 180, 256 N.W. 700 (1934); *Feest v. Allis-Chalmers Corp.*, 68 Wis.2d 760, 767, 229 N.W.2d 651 (1975). A retroactive application is not favored unless there is a clear intent shown by the legislature that it be so applied. *Swanke v. Oneida County*, 265 Wis. 92, 99, 60 N.W. 2d 756 (1953); *Northern Supply Co. v. City of Milwaukee*, 255 Wis. 509, 516, 39 N.W.2d 379 (1949). Since there is no indication that the legislature intended a retroactive application of the amended version of sec. 111.32(5)(f)1, the unamended version should apply in this case.

aggravating the intensity of the handicap or creating a situation injurious to others. Such an interpretation would compromise not only the best interests of the handicapped but all concerned." *Bucyrus-Erie Co. v. ILHR Department, supra* at 423.

In this case, the employer created a job employment standard to fit the circumstances of an employee with one kidney even though he had no prior formal standards. There is no evidence in this case to demonstrate that the respondent was physically unable to perform the job duties of a truck assembler. The employer admitted that the respondent's "work performance was satisfactory." The only question was whether the respondent could perform the job safely. While there was evidence that the company considered the truck assembler's job to be one of risk because of the danger that a worker may fall from the tanks, it must be pointed out that there was no evidence in the record to support this fear. The record fails to disclose any evidence that an employee had previously been injured from a fall off the tanks. Nor was there any evidence that the respondent had fallen. Lastly, the company's expert witness, a urologist, testified that the respondent was *not* more likely to fall because he had only one kidney.

■ Therefore, we hold that the appellant, the Dairy Equipment Company, failed to establish to a reasonable probability that the respondent was unable to efficiently and safely perform the duties of truck assembler in this case because of the fact that he had only one kidney. Furthermore, we hold there was substantial evidence in the record to support the findings of the department and thus we agree with the circuit court.

*By the Court.*—Judgment affirmed.