Jerri-Linn PHILLIPS, Petitioner-Appellant,

v.

WISCONSIN PERSONNEL COMMISSION,
Respondent-Respondent.

Court of Appeals

*No. 90-2929. Submitted on briefs November 6, 1991.—Decided
February 13, 1992.*

(Also reported in 482 N.W.2d 121.)

206

For the petitioner-appellant the cause was submitted on the briefs of *Shelley J. Gaylord* of *Gaylord & Schuett* of Madison; *Paul Di Donato* and *Andrea Palash* of *National Gay Rights Advocates* of San Francisco, California; *Warren Bittner* of Miami Shores, Florida.

For the respondent-respondent, Wisconsin Personnel Commission, the cause was submitted on the briefs of *Michael H. Auen* and *Judith S. Neese* of *Foley & Lardner* of Madison; for the respondent, Department of Health & Social Services, a brief was submitted by *James E. Doyle,* attorney general, and *Bruce A. Olsen,* assistant attorney general.

For American Civil Liberties Union and American Civil Liberties Union of Wisconsin Foundation the cause was submitted on the brief of *Marc E. Elovitz* and *Joseph Evall* of *Debevoise & Plimpton* of New York, New York, and *Jeff Scott Olson* of *Julian, Olson & Lasker, S.C.,* of Madison.

Of Counsel: *Ruth E. Harlow* and *William B. Rubenstein* of *American Civil Liberties Union Foundation* of New York, New York, and *Gretchen E. Miller* of *ACLU of Wisconsin Foundation* of Milwaukee.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J. Jerri-Linn Phillips appeals from an order affirming the Wisconsin Personnel Commission's dismissal of her employment discrimination complaint against the Department of Health and Social Services (DHSS). Phillips alleged in her complaint to the commission that DHSS, her employer, and the Department of Employe Trust Funds, the administrator of the state employee health insurance program, discriminated against her on the bases of marital status, sexual orientation and gender within the meaning of the Wisconsin Fair Employment Act, secs. 111.31 to .395, Stats., by denying her application for family health insurance coverage for her lesbian companion, Lorri Tommerup.

In addition to her state-law discrimination claims, she argues on appeal that provisions in the statutes and administrative code limiting dependent health insurance coverage to an employee's spouse and children denies equal protection of the law to persons of her sexual orientation since same-sex couples may not legally marry. Finally, she contends that an "equal employment opportunity" policy statement issued by DHSS gave her a contractual right to secure health insurance benefits for Tommerup.

We conclude first that the commission, as the agency charged by the legislature with administration of the Fair Employment Act, could reasonably interpret the applicable statute and rule as legitimately limiting dependent health insurance coverage to employees' spouses and children without violating the marital status discrimination provisions of the act.

We also conclude that the commission and the trial court correctly dismissed Phillips's claims that such a limitation discriminates against her on the basis of sex-

ual orientation and gender in violation of the act. We do so because the rule applies equally to hetero- and homo-sexual employees and thus does not discriminate against the latter group. Nor does the rule treat one gender differently than the other; it applies equally to males and females. It is keyed to marriage and, as we said, it does not illegally discriminate by doing so.[1]

[1]Understandably, most of Phillips's arguments on gender and sexual orientation discrimination/classification are grounded on the fact that Wisconsin does not recognize same-sex marriages. Because dependent insurance coverage is not available to companions of unmarried state employees, and because she may not legally marry her female companion, Phillips claims she is being discriminated against because of her sexual orientation. She also contends that the rule discriminates on the basis of gender because male employees with female companions may legally marry their companions and secure the extended insurance benefits.

Phillips's inability to marry Tommerup is thus the key to her argument. But whether to allow or disallow same-sex marriages—or even whether to allow extension of state employee health insurance benefits to companions of unmarried state employees of whatever gender or sexual orientation—is a legislative decision, not one for the courts. Indeed, the point is well made in the briefs of the American Civil Liberties Union Foundation and the American Civil Liberties Union of Wisconsin Foundation, as *amici curiae,* when, urging us to rule that state insurance coverage be extended to employees' companions, they suggest that we can ensure responsible administration of such a program by "creat[ing] a scheme" to ensure that benefits are extended only to same-sex couples with adequate "indicia of commitment" to each other—or a "registration scheme" that "is enforceable and guards against fraud."

"Creation" of verification and registration systems designed to facilitate the extension of state employee benefits to the employees' unmarried companions—and an enforcement mechanism to ensure that only stable and committed same-sex couples

Finally—and for similar reasons—we conclude that Phillips's equal protection and "contract" arguments must also fail. We therefore affirm the trial court's order.

The commission found the following facts, and they do not appear to be in dispute. Phillips has a committed lesbian relationship with Tommerup which is recognized by their families, friends, neighbors and co-workers. They share their incomes, rent a home and own an automobile together. They carry joint renters and auto insurance and take their vacations together. Tommerup has been financially dependent on Phillips since 1986, when she returned to school to seek a graduate degree. If the option were legally available to them in Wisconsin, they would marry.

Phillips applied to her employing agency, DHSS, to change her health insurance from individual to family coverage so as to provide insurance for Tommerup as her "dependent." DHSS forwarded the application to the Department of Employe Trust Funds (DETF), the administrator of the state health insurance plan. Because sec. 40.02(20), Stats., and applicable DETF rules define "dependents" eligible for insurance coverage in terms of the employee's "spouse" or children,[2] her application was denied.

---

are eligible for such benefits—is precisely the type of action committed to the legislature, as the policymaking branch of government. It is beyond all powers of this or any other court.

[2]Section 40.02(20), Stats., defines "dependent" for purposes of the employee trust fund:

> "Dependent" means the spouse, minor child, including stepchildren of the current marriage dependent on the employe for support and maintenance, or child of any age, including stepchildren of the current marriage, if handicapped . . .. For group insurance purposes only, the department may promulgate rules with a different definition of "dependent" than the one otherwise provided in this subsection for each group insurance plan.

Phillips then filed a discrimination complaint with the personnel commission. The commission dismissed the complaint for failure to state a claim upon which relief could be granted and the circuit court affirmed.

## I. CLAIMS UNDER THE FAIR EMPLOY-MENT ACT

The crux of Phillips's argument is that the DETF rule limiting family health insurance coverage to the employee's "spouse" and children discriminates against her on the basis of her marital status, sexual orientation and gender in violation of the act. We address each claim in turn.

Application of a statute or rule to a set of facts is a question of law; and the general rule is that we are not bound by an agency's conclusions of law. *West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 11, 357 N.W.2d 534, 539 (1984). In some instances, however, we defer to an agency's legal conclusions and interpretation of statutes. *William Wrigley, Jr. Co. v. DOR,* 160 Wis. 2d 53, 69, 465 N.W.2d 800, 806, *cert. granted,* — U.S. — (1991). Where, for example, the agency is charged by the legislature with the duty of applying the statute being interpreted, the agency's interpretation "is entitled to great weight." *Lisney v. LIRC,* 165 Wis. 2d 628, 633, 478 N.W.2d 55, 56 (Ct. App. 1991), citing *DILHR v. LIRC,* 161 Wis. 2d 231, 243, 467 N.W.2d 545, 549 (1991).

Exercising the rulemaking authority delegated to it by sec. 40.02(20), Stats., the department adopted a rule (Wis. Adm. Code sec. ETF 10.01(2)(b)) defining "dependent" for health insurance purposes as: "[A]n employe's spouse and an employe's unmarried child who is dependent upon the employe or the employe's former spouse for at least 50% of support and maintenance . . .."

As indicated, Phillips's complaint asserts several claimed violations of the Fair Employment Act (WFEA), which generally prohibits discrimination in employment by reason of the employee's marital status, gender and sexual orientation. *See* secs. 111.321 and 111.36(1)(d)1, Stats. The personnel commission is charged by the legislature with the duty of hearing and deciding discrimination claims and applying the provisions of the act to particular cases. *See* sec. 111.375(2). We thus accord "great weight" to the commission's interpretation of the act and will uphold that interpretation unless it is clearly contrary to legislative intent. *Lisney,* 165 Wis. 2d at 633, 478 N.W.2d at 56. Indeed, we are bound to affirm the commission's interpretation if it is reasonable, even if another conclusion is equally reasonable. *DILHR,* 161 Wis. 2d at 245, 467 N.W.2d at 550.[3]

### *Marital Status Discrimination*

"[T]he broad purpose of the [WFEA] is to eliminate practices that have a discriminatory impact as well as practices which on their face amount to invidious discrimination." *Wisconsin Tel. Co. v. DILHR,* 68 Wis. 2d 345, 368, 228 N.W.2d 649, 661–62 (1975). Among other things, the act prohibits employers from discriminating

---

[3]Phillips contends that because the personnel commission has no documented experience or expertise in interpreting employee health insurance laws and rules such as those involved in this case, we should pay no deference to its decision.

We disagree. The statutory issues in this case do not involve interpretation of the employee insurance laws and rules *per se,* but only whether an insurance rule that admittedly denies dependent coverage to unmarried companions of state employees violates certain provisions of the WFEA—the law the commission is charged with the duty of hearing and deciding under the act.

against individuals on the basis of their marital status. Section 111.321, Stats.

The legislature has established a standard health insurance plan which provides a "family coverage option" for "eligible dependents" of state employees and a "single coverage option" for other employees. Section 40.52(1)(a), Stats. As indicated above, the legislature and DETF have defined "dependent" in terms of the employee's spouse and certain of his or her children. Thus, to the degree it allows married employees to include their spouses and dependent children in their health insurance coverage, the state may be said to offer greater health insurance benefits to its married employees than to its single employees. The issue is whether the law and administrative rules implementing that dual coverage system conflict with the Fair Employment Act. We agree with the personnel commission and the trial court that they do not.

A basic rule of statutory construction is that the intent of the legislature should control the interpretation. *Milwaukee County v. DILHR,* 80 Wis. 2d 445, 451, 259 N.W.2d 118, 121 (1977). This is especially true when two laws are claimed to be inconsistent: "Whenever a court is confronted with apparently inconsistent legislation, its goal is to ascertain the intent of the legislative body and construe the law accordingly." *Cross v. Soderbeck,* 94 Wis. 2d 331, 343, 288 N.W.2d 779, 784 (1980). In such a situation, the aim is to reconcile the two laws, if at all possible; not to nullify one or the other. *Mack v. Joint Sch. Dist. No. 3,* 92 Wis. 2d 476, 489, 285 N.W.2d 604, 610 (1979).

Although single and married employees are treated differently under the current benefits scheme in that dependent coverage is available to a married worker's

spouse,[4] we agree with the commission that "the legislature did not intend this kind of differentiation on the basis of marital status to be violative of the WFEA." As the commission points out, nothing in the legislative history of the act suggests that it was intended to prevent the state from providing dependent health insurance benefits to an employee's spouse without extending them to an unmarried companion.

We note that the legislature added "marital status discrimination" as a form of discrimination prohibited by the WFEA at the same time it amended sec. 40.02(20) to adopt the current definition of "dependent." Section 22, ch. 334 and sec. 3, ch. 386, Laws of 1981. And "[w]hen the legislature enacts a statute, it is presumed to act with full knowledge of the existing laws, including statutes." *Mack,* 92 Wis. 2d at 489, 285 N.W.2d at 610. *See also Wisconsin Mut. Ins. Co. v. Duel,* 241 Wis. 394, 412, 6 N.W.2d 330, 338 (1942) (legislature's adoption of general tax provision cannot override specific exemption enacted two weeks earlier). We agree with the trial court that the commission could reasonably conclude from the timing of these amendments that the legislature did not intend that one would nullify the other.[5]

---

[4]As indicated, dependent benefits are available for an employee's children as well—whether or not the employee is married and regardless of his or her sexual orientation. Phillips's claims in this case, however, go only to those portions of the statute and rule limiting dependent coverage to an employee's "spouse," as opposed to unmarried companions.

[5]Phillips appears to argue that it was discriminatory (based on marital status) for DETF to fail to adopt a rule with a much broader definition of "dependent"—one including unmarried companions. Describing the grant of rulemaking power in sec. 40.02(20), Stats., as an "unrestricted, open-ended power to make

■
We also note in this regard that while there is, admittedly, disparate treatment in this case, not all disparate treatment is discriminatory. It is only where similarly situated persons are treated differently that discrimination is an issue. *Federated Rural Elec. Ins. Co. v.*

rules," she asserts that, possessing such power, DETF "may not violate the very body of laws from which it derives its rulemaking authority." We do not see the delegation of rulemaking authority in sec. 40.02(20) as requiring DETF to design its definition of "dependent" along the lines suggested by Phillips. Indeed, we see it as a limited authority.

The trial court considered the legislative history of the 1982 amendment to sec. 40.02(20), Stats., permitting the administrative agency to adopt its own definition of "dependent."

> Section 40.02(20), as enacted in 1981, contained a provision for unmarried young adult children. *See,* ch. 96, Laws of 1981, sec. 24. The 1982 amendment . . . removed the reference to unmarried young adult children and authorized administrative agencies to change the definition of dependent for group insurance purposes only. This amendment restored an earlier provision giving agencies authority to include unmarried children in the definition of dependent. *See* sec. 40.11(6), Stats. (1979-80).

Then, pointing to a legislative committee report on these changes indicating that the amendment to sec. 40.02(20), Stats., was only a "minor policy change," the court concluded that in allowing the agency to redefine "dependent," the legislature "did not intend to implement major policy changes through the rulemaking provision and did not intend to empower administrative agencies to extend family health insurance benefits to alternative families like petitioner's or other types." The court's analysis is consistent with the commission's finding that the "legislative history strongly supports the theory that all the legislature intended by the grant of rule-making authority in § 40.02(20), Stats., was to permit DETF to 'fine tune' the term 'child' as used in the legislative definition of 'dependent,' " and it provides further support for the conclusion we reach on this issue.

*Kessler,* 131 Wis. 2d 189, 211, 388 N.W.2d 553, 561 (1986).

Here, the legislature has declared that eligibility for family health insurance coverage is determined by marriage or the presence of dependent children. We have no doubt that Phillips and Tommerup have a committed relationship that partakes of many of the attributes of marriage in the traditional sense. Despite this, however, the fact that Phillips regards Tommerup as her "spouse equivalent" does not make her "similarly situated" to a married employee in the context of a discrimination analysis. For good or ill, the fact is that under current Wisconsin law Phillips, unlike a spouse, has no legal relationship to Tommerup. The law imposes no mutual duty of general support, and no responsibility for provision of medical care, on unmarried couples of any gender, as it does on married persons. *See,* for example, sec. 49.90(1)(m), Stats., which declares that "[e]ach spouse has an equal obligation to support the other spouse," an obligation that may be compelled by the state and enforced in the courts. Thus, Phillips's legal status is not similar to that of a married employee,[6] and, for the reasons discussed, we conclude that the trial court and the commission properly rejected her claim of marital status discrimination under the Fair Employment Act.

---

[6]Phillips correctly points out that the rule includes "stepchild" in its definition of "dependent" and thus reaches beyond the bounds of legal dependency—at least as far as children are concerned. But, as we note elsewhere in this opinion, her claims in this case are grounded on the provisions of the rule limiting insurance coverage to the employee's "spouse." The provisions allowing coverage for an employee's children are not at issue.

Phillips argues that the rule's use of the term "spouse" to determine eligibility for dependent health insurance coverage has the effect of discriminating against her on the basis of her sexual orientation. Her position on this issue is substantially the same as that argued in support of her claim of marital status discrimination; it, too, emphasizes her inability to enter into a legal marriage with Tommerup. Again, we sustain the commission's ruling as reasonable.

In *Hinman v. Dep't of Personnel Admin.*, 213 Cal. Rptr. 410, 419 (Cal. App. 1985), the court upheld the denial of dental benefit coverage to unmarried partners of homosexual state employees against a challenge that to do so discriminated on the basis of sexual orientation. In that case, as here, eligibility for dependent coverage was limited to the employee's "spouse" or unmarried dependent child, and the court rejected the appellant's claim that the provision distinguished between heterosexual and homosexual employees, concluding that it distinguished only between married and unmarried employees and that such a distinction was not improper. *Id.*[7]

In this case, the personnel commission ruled that Phillips's complaint failed to state a claim for discrimination based on sexual orientation because the chal-

---

[7]We do not ground our approval of the distinction between married and unmarried employees on the same basis that the *Hinman* court did. However, that difference does not render the decision inapposite to our discussion of sexual orientation discrimination, for, as we hold in this case, limiting the extension of health insurance benefits to spouses and certain children of state employees does not violate the WFEA.

lenged DETF rule distinguishes between married and unmarried employees, not between homosexual and heterosexual employees. Family coverage for Tommerup would be denied to Phillips if she were an unmarried *hetero*sexual—male or female—just as it is to her as a lesbian female.

And while she complains that she is not married to Tommerup only because she may not legally marry another woman, that is not a claim of sexual orientation discrimination in employment; it is, as we have noted earlier, a claim that the marriage laws are unfair because of their failure to recognize same-sex marriages. It is a result of *that* restriction, not the insurance eligibility limitations in the statute and the DETF rule, that Phillips is unable to extend her state employee health insurance benefits to Tommerup. And, as we said at the outset of this opinion, any change in that policy is for the legislature, not the courts.[8]

### Gender Discrimination

Phillips next contends that the rule's use of the term "spouse" to define eligible dependents discriminates against her on the basis of gender. She argues that "as a female, she was being treated differently from all other *similarly situated males* [because] she could never qualify [Tommerup] . . . as a 'dependent' . . . by . . . marrying her." (Emphasis added.) Thus, she maintains, "because only the opposite gender (males), can marry [Tommerup] . . . and qualify her as a 'dependent,' " the law and rule discriminate against her and all other female state employees.

---

[8]*See,* note 1, *supra.*

Here, too, we agree with the court and commission that they do not—and for essentially the same reasons. As the commission noted, Phillips is not being treated differently from "similarly situated males." The only males whose situations are similar to hers are those with male "spousal equivalents"; and they, like Phillips, may not secure dependent health insurance coverage for their companions. Since the rule affects unmarried males and unmarried females equally, the personnel commission could reasonably conclude that Phillips has not stated a claim of gender discrimination.

## II. CONSTITUTIONAL (EQUAL PROTECTION) CLAIMS

Phillips next argues that the DETF rule violates the equal protection guarantees of art. I, sec. 1 of the Wisconsin Constitution,[9] in that it creates a classification of people who are denied certain employment benefits on the basis of marital status, sexual orientation and gender.[10]

---

[9]Article I, sec. 1 entitled "Equality; inherent rights," states that "[a]ll people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness . . .."

[10]The personnel commission and DHSS argued to the trial court that it should not consider Phillips's constitutional and contract claims because the commission lacked jurisdiction to consider them. The trial court ruled that even if that were true, it (the court) had the power to consider them, see sec. 227.52, Stats., and proceeded to do so.

On appeal, the commission repeats the argument and, despite the trial court's decision, has elected not to argue the merits of any of the constitutional or contract issues to this court. While we normally regard a respondent's failure to counter an appellant's

■■■■ As we have noted, the personnel commission never considered Phillips's constitutional claims. In any event, the constitutionality of a statute or rule is a legal question which we decide independently, owing no deference to the decision of an administrative agency or the trial court. *Skow v. Goodrich,* 162 Wis. 2d 448, 450, 469 N.W.2d 888, 889 (Ct. App. 1991). Another rule applicable to our discussion is that administrative rules, like statutes, "carry a heavy presumption of constitutionality and the challenger has the burden of proving unconstitutionality beyond a reasonable doubt." *Id.*

■■■■ Although no express guaranty of equal protection of the laws is found in the Wisconsin Constitution, it has long been recognized that art. I, sec. 1 of that document implies the same equal protection guarantees as are found in the United States Constitution. *See, e.g., State ex rel. Sonneborn v. Sylvester,* 26 Wis. 2d 43, 49, 132 N.W.2d 249, 252 (1965); *State ex rel. Steeps v. Hanson,* 274 Wis. 544, 549, 80 N.W.2d 812, 815 (1957). And "the same legal analysis will be applied to test . . . constitutionality . . . under the equal protection guarantees of either Constitution." *Treiber v. Knoll,* 135 Wis. 2d 58, 68, 398 N.W.2d 756, 760 (1987).

argument as a concession on the point, *State ex rel. Sahagian v. Young,* 141 Wis. 2d 495, 500, 415 N.W.2d 568, 570 (Ct. App. 1987), we elect not to do so here. As indicated, the trial court considered and ruled on these issues and DHSS has responded briefly to them on appeal. Thus, despite the commission's failure to brief them, we consider the issues to be before us on this appeal.

There are varying levels of analysis in equal protection cases. Generally, a government regulation[11] will be presumed to be consonant with equal protection requirements as long as the classification drawn by the regulation has a "rational basis"; that is, if it "rationally furthers some legitimate, articulated state purpose." *Ben-Shalom v. Marsh,* 881 F.2d 454, 463 (7th Cir. 1989), *cert. denied,* 494 U.S. 1004 (1990). The United States Supreme Court has said, however, that when a statute or rule classifies by race, alienage, or national origin, "these laws are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440 (1985).[12]

Phillips first contends that sexual orientation and marital status[13] are suspect classifications deserving the

[11]As indicated, Phillips contends that she is challenging the administrative rule, not the statute. In either case, the same constitutional standards and analyses apply. *See Richards v. Cullen,* 150 Wis. 2d 935, 942, 442 N.W.2d 574, 577 (Ct. App. 1989).

[12]Other, "intermediate" levels of scrutiny are applied to legislative classifications based on gender, which must be "substantially related to a sufficiently important governmental interest," and illegitimacy, which must be "substantially related to a legitimate state interest." *Cleburne,* 473 U.S. at 440–41.

[13]With respect to marital status, Phillips's only argument is that because marital status discrimination in employment is prohibited by the WFEA, "marital status classifications" should be subject to strict scrutiny in an equal protection analysis. She offers no authority for the proposition, nor have we found any. Nor has she indicated how marital status comports with the factors identified by the United States Supreme Court as useful in determining whether heightened scrutiny is appropriate: whether the group has suffered a history of purposeful discrimination; whether the discrimination embodies "a gross unfairness that is

highest level of scrutiny. The trial court rejected that contention, relying on *Ben-Shalom,* 881 F.2d at 464 n.8, where the court stated that increased scrutiny—anything over and above the "rational basis" test—"is presently reserved for classifications by race, alienage, national origin, gender and illegitimacy." To the same effect, see *Cleburne,* 473 U.S. at 440–41. Specifically, *Ben-Shalom* reversed a district court decision directing the United States Army to reenlist a lesbian soldier, stating that "homosexuals do not constitute a suspect or quasi-suspect class entitled to greater than rational basis scrutiny for equal protection purposes." *Id.* at 464. *Accord Woodward v. United States,* 871 F.2d 1068, 1076 (Fed. Cir. 1989), *cert. denied,* 494 U.S. 1003 (1990); *High Tech Gays v. Defense Indus. Sec. Clearance Office,* 895 F.2d 563 (9th Cir. 1990).

Phillips disagrees with that conclusion and counters with two citations. First, she points to a passage in Professor Tribe's text, American Constitutional Law, 2d ed. 1988, discussing the history of discrimination against homosexuals and concluding that "[h]omosexuality should . . . be added . . . to the list of classifications that trigger increased judicial solicitude." *Id.* at 1616. *See also Watkins v. United States Army,* 837 F.2d 1428, 1444–48 (9th Cir. 1988), and rereported, 847 F.2d 1329, *different results reached on reh'g en banc,* 875 F.2d 699 (1989), *cert. denied,* — U.S. — (1990) (analysis of relevant factors under U.S. Supreme Court decisions "ineluctably leads us to the conclusion that homosexuals

sufficiently inconsistent with the ideals of equal protection to term it invidious"; and whether the group claiming to be discriminated against "lacks the political power necessary to obtain redress from the political branches of government." *See Watkins v. United States Army,* 837 F.2d 1428, 1444–47 (9th Cir. 1988), citing, among other cases, *Cleburne,* 473 U.S. at 441.

constitute . . . a suspect class"). She also suggests that the fact that WFEA prohibits sexual orientation and marital status discrimination should, by itself, lead to higher scrutiny of such classifications in an equal protection analysis with respect to this claim.

We deem it unnecessary to reach the precise question, however. Because the law and rule challenged by Phillips in this case do not classify by sexual orientation, we do not even reach the threshold of an equal protection analysis.

As we noted above, Phillips's insurance application was denied not because of her sexual orientation, but because the person to whom she wished dependent coverage extended was not her spouse. She is thus in the same position as all unmarried heterosexual males and females; and because the rule does not classify on the basis of sexual orientation, the trial court correctly held that Phillips's complaint failed to state an equal protection claim on that basis.

Phillips's claim of improper classification based on gender meets a similar fate. While, as we have indicated, classifications based on gender are subject to an elevated level of scrutiny, her claim must fail at the very outset because, again, dependent insurance coverage is unavailable to unmarried companions of both male *and* female employees. A statute is only subject to a challenge for gender discrimination under the equal protection clause when it discriminates on its face, or in effect, between males and females. *In re Baby Girl K,* 113 Wis. 2d 429, 448, 335 N.W.2d 846, 856 (1983). Because the rule does not classify by gender, that ends our inquiry.

227

## III.   CONTRACT CLAIMS

Finally, Phillips argues that a policy statement issued by her employing agency, DHSS, created a contractual right that she may now enforce to gain insurance coverage for Tommerup. This, too, is a legal issue which we consider *de novo,* owing no deference to the trial court's decision.

The policy statement provides:

### EQUAL EMPLOYMENT OPPORTUNITY

The Department is committed to providing equal employment opportunity in all terms, conditions, or privileges of employment, including, but not limited to, recruitment, certification, selection, job assignments, working conditions, *fringe benefits,* compensation, training, transfer, layoffs, discriminatory actions, terminations or promotions.

Equal employment for all persons regardless of race, creed, color, sex, national origin, or ancestry, age, religion, handicap, arrest or conviction record, sexual orientation, marital status or political affiliation is a fundamental agency policy. [Emphasis added.]

Phillips's position is that the statement constitutes a "contract[   ]" between the department and its employees which binds the department to provide her with "equal employment benefits"—which she maintains include the same dependent health insurance coverage available to married employees. She has cited no authority stating a legal basis for such an argument, however, and we note our general rule that we do not consider arguments "unsupported by references to legal authority." *Racine Steel Castings v. Hardy,* 139 Wis. 2d 232,

240, 407 N.W.2d 299, 302 (Ct. App. 1987), *rev'd on other grounds,* 144 Wis. 2d 553, 426 N.W.2d 33 (1988).

Beyond that, to the extent Phillips's argument suggests that the policy statement obligates the department not to discriminate against her, we have already held that her discrimination claims were properly dismissed by the commission and the trial court. We note, too, that this case arose on a petition to review a decision of the personnel commission under the Administrative Procedure Act, ch. 227, Stats. It is not a challenge to any DHSS action or decision.

*By the Court.*—Order affirmed.