**INDIANA CIVIL RIGHTS COMMIS-
SION and N. June Leslie,
Appellants,**

v.

**SOUTHERN INDIANA GAS AND
ELECTRIC COMPANY, Appellee.**

No. 63A04–8807–CV–245.

Court of Appeals of Indiana,
Fourth District.

Oct. 5, 1989.

Jacquelyn Thompson, Indianapolis, for appellants.

Arthur D. Rutkowski, James P. Casey, Bowers, Harrison, Kent & Miller, Evansville, for appellee.

MILLER, Judge.

The Indiana Civil Rights Commission and N. June Leslie appeal a Pike County Circuit Court decision reversing the Commission's determination that Leslie was a victim of handicap discrimination. Leslie's application for employment as a "meter man" was rejected by the Southern Indiana Gas and Electric Company [SIGECO] because the company doctor found she was afflicted with a congenital back defect (sacralization of the L–5 vertebra) and was therefore "unfit for heavy work." The Commission determined Leslie was a victim of employment discrimination because, while she did have the defect in her back, this condition was unrelated to her ability to engage in the occupation of "meter man" at the time of the decision by SIGECO not to hire her. We reverse the trial court and order the Commission's determination be reinstated.

### Issues

The Commission and Leslie raise two related issues. Because we reverse, we restate them as follows:

I. Whether the trial court erred in finding that Leslie was not handicapped?

II. Whether the trial court erred in finding that SIGECO established a "good faith" defense by relying on its doctor's opinion?

### Facts

Leslie filled out an employment application with SIGECO on June 24, 1983 for the job of "meter man". Leslie is a 5' 1" female weighing 124 pounds. The job of meter man does not involve meter reading, but instead, requires heavy lifting on a daily basis. SIGECO's doctor, a general practitioner named Carroll L. Boyle, M.D., examined Leslie, as part of a preemployment physical examination, and determined because she had a condition known as the sacralization of the L–5 vertebra she was unfit for heavy lifting. Based on Dr. Boyle's report, SIGECO made the decision not to hire Leslie. The parties have stipulated that had Leslie been found fit for heavy lifting, she would have been hired for the job of meter man.

Leslie was surprised to learn that she had such a back condition because she has always led a physically active life, having played softball, gymnastics, and running track. She had performed heavy lifting both at work and at home. She had never experienced any disability.

She sought a second medical opinion from a specialist in orthopedics, Dr. Milan D. Gerlanc, M.D.. Gerlance examined Leslie, took x-rays, noted the sacralization of the L–5 vertebra, but concluded that Leslie had no greater problem than anyone who had a "normal" back. Gerlanc stated that Leslie's back is actually more stable at the affected area than that of a "normal" individual.

Leslie filed her handicap discrimination claim with the Indiana Civil Rights Commission and obtained a "Certification of Handicap." A hearing was held before a hearing officer of the Commission on January 27, 1986. The Commission entered its Findings of Fact, Conclusions of Law, and Order on May 13, 1986. The Commission found that SIGECO had failed to prove that Leslie was presently unable to perform the duties of a meter man safely and efficiently and therefore Leslie was a victim of handicap discrimination because her

back condition was unrelated to her ability to engage in the occupation of "meter man." The Commission ordered SIGECO to either 1) employ Leslie as a meter man immediately or 2) employ Leslie as a meter man the next time such a position became available *and* pay her as if she were working until that time. The Commission also ordered SIGECO to pay Leslie $30,662.28 (minus deductions required by law and/or agreement) in compensation for her unmitigated damages for not being hired as a meter man earlier.

## *Decision*

### I. Was Leslie Handicapped?

The Indiana Civil Rights Law, IND. CODE 22–9–1–2, provides as follows:

(a) It is the public policy of [Indiana] to provide all of its citizens equal opportunity for education, employment, access to public conveniences and accommodations and acquisition through purchase or rental of real property including but not limited to housing, and to eliminate segregation or separation based solely on race, religion, color, sex, handicap, national origin or ancestry, since such segregation is an impediment to equal opportunity. Equal education and employment opportunities and equal access to and use of public accommodations and equal opportunity for acquisition of real property are hereby declared to be civil rights.

(b) The practice of denying these rights to properly qualified persons by reason of the race, religion, color, sex, handicap, national origin or ancestry of such person is contrary to the principles of freedom and equality of opportunity and is a burden to the objectives of the public policy of [Indiana] and shall be considered as discriminatory practices. The promotion of equal opportunity without regard to race, religion, color, sex, handicap, national origin or ancestry through

reasonable methods is the purpose of this chapter.

\* \* \* \* \* \*

(f) This chapter shall be construed broadly to effectuate its purpose.

"Handicap or handicapped" as defined by IND.CODE 22–9–1–3(q) means:

the physical or mental condition of a person that constitutes a substantial disability. In reference to employment, under this chapter [Civil Rights Enforcement], 'handicap or handicapped' also means the physical or mental condition of a person that constitutes a substantial disability unrelated to the person's ability to engage in a particular occupation.

■ Indiana civil rights law provides that it is a discriminatory practice to deny employment to persons solely on the basis of their handicap. IND.CODE 22–9–1–2. However, the prohibition against discrimination in employment because of a handicap does not apply to the failure of an employer to employ or to retain as an employee any person who because of a handicap is physically or otherwise unable to efficiently and safely perform, at the standards set by the employer, the duties required in that job. I.C. 22–9–1–13(a). *Indiana Civil Rights Com'n v. American Commercial Barge Line Co.* (1988), Ind. App., 523 N.E.2d 241 (*trans. denied*).[1] Obviously, one must be afflicted with a handicap in order to bring a handicap discrimination action.

■ The facts are largely undisputed in this case. SIGECO admits that Leslie's back condition does not hinder her ability to perform the job of meter man. SIGECO directs our attention to the evidence and vigorously asserts Leslie is not handicapped even by her own admission. Therefore, SIGECO asserts, because Leslie is not handicapped, she may not bring a handicap discrimination action.

---

1. This defense constituted the major factual issue at the Civil Rights Commission hearing below—whether Leslie's back condition did in fact cause her to be unfit for heavy lifting. This issue was settled once and for all by the Commission. It found, based on substantial evidence, that Leslie could perform safely and efficiently, at the standards set by SIGECO, the duties required of a meter man. R. p. 859. Neither we, nor the trial court below, can upset this finding. *Indiana Department of Correction v. Indiana Civil Rights Com'n* (1986), Ind.App., 486 N.E.2d 612 (*trans. denied*).

The Civil Rights Commission made the following finding with respect to this problem:

5. An employer who has refused a person employment because of a physical condition is estopped from denying that that person's physical condition is a substantial disability.

The trial court in reversing the Commission found that no estoppel standard was provided for under Indiana law. The trial court agreed with SIGECO by finding that Leslie had failed to meet the threshold requirement under the law by demonstrating her back condition constituted a substantial disability.

Leslie argues SIGECO's defense, accepted by the trial court, places her in a "catch 22" situation. SIGECO admits it discriminated against Leslie because of her back condition. However, Leslie cannot complain of the discrimination because, by her own admission and the testimony of her doctor, her back condition does not constitute a substantial disability.

Although Indiana has never addressed this problem, ample authority from other jurisdictions guides our decision. In *Dairy Equipment Co. v. Department of Industry, Labor and Human Relations* (1980), 95 Wis.2d 319, 290 N.W.2d 330, 28 F.E.P. Cas 1355, 22 Empl.Prac.Dec.P. 30.809, an employee alleged he was discriminated against because he had only one kidney. The employer terminated the worker immediately after discovering he had only one kidney, three days after hiring him. The employer had been satisfied with the worker's performance and admitted the sole reason he was terminated was because he had only one kidney. The employer admitted the worker would not have been terminated had he had two kidneys. The worker stated he never considered himself to be handicapped. One of the employer's defenses was that, because the worker's condition did not make "achievement unusually difficult," he was not handicapped under Wisconsin law and therefore could not bring a handicap discrimination suit. In Wisconsin, a handicap was defined as a 'disadvantage that makes achievement unusally difficult;

esp.: a physical disability that limits the capacity to work.' *Id.* 290 N.W.2d at 335 (citation omitted). The Wisconsin court held the worker was handicapped and protected against discrimination by state law. The court held as follows (290 N.W.2d at 335, 336):

It would be both ironic and insidious if the legislative intent in providing the protection of the Fair Employment Act were afforded to persons who actually have a handicap that makes 'achievement unusually difficult' or limits their capacity to work, but the same protection is denied to those whom employers *perceive* as being handicapped. Congress recognized this situation and it included within the definition of the term 'handicapped individuals' persons who are *regarded* as having an impairment:

'... any person who (A) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (B) has a record of such an impairment, or (C) *is regarded as having such an impairment.*' Rehabilitation Act of 1973, 29 U.S.C., Sec. 706(6) (1976). (emphasis added by Wisconsin court)

Moreover, the Washington Court of Appeals in *Barnes v. Washington Natural Gas Co.*, 22 Wash.App. 576, 591 P.2d 461 [27 F.E.P. Cas 1503, 19 Empl.Prac.Dec. P 8953] (1979) likewise sees the dangers in a perceived handicap and thus ruled that the application of the Washington state law against discrimination based on handicap '... should not be limited to those who actually have handicaps, excluding those who are discriminated against in the same way because they are only *thought* to have handicaps.' *Id.* 591 P.2d at 465. (emphasis added by the Wisconsin court)

We are impressed by the rationale of the Wisconsin decision as well as with the Washington decision and the Federal law cited therein. We must construe the Indiana Civil Rights Law liberally and broadly in order to effectuate its purpose. I.C. 22–9–1–2(f). We hold that persons who are discriminated against because they are perceived as having handicaps are pro-

tected by the Act.[2] Therefore, we hold the trial court erred in finding that Leslie was not handicapped and ineligible for the protection afforded by the Act.

## II. Good Faith Reliance on Doctor's Report Defense

SIGECO asserts, and the trial court found, that its good faith reliance on its doctor's opinion that Leslie was unfit for heavy lifting, relieves it from any liability. SIGECO reasons, and the trial court found, that such good faith reliance negates any discriminatory motive. This reasoning is faulty because such reliance, in fact, establishes the discriminatory motive. The issue is whether discrimination based on the good faith reliance upon a doctor's opinion is of such a benign nature it falls outside the protection of the Act.

Again, although Indiana has not addressed this issue, an authority from a foreign jurisdiction guides our decision. In *Maine Human Rights Com'n on behalf of and use of Gordon v. Canadian Pacific Limited* (1983), Me., 458 A.2d 1225, 31 F.E. P.Cas 1028, 31 Empl.Prac.Dec. P 33,549, the employer, as in our case, failed to prove its discrimination against certain workers because of their handicaps was lawful. The doctor had opined that these workers could not perform their duties in a manner which would not endanger the health or safety of the employee or the health or safety of others. The employer argued its good faith reliance on this doctor's opinions exonerated it from liability. In rejecting this argument, the court held:

> As this Court has previously held, an employer's good faith is not at issue in determining the validity of discriminatory employment practices under the [Maine Human Rights Act]. 'The touchstone of our statutory prohibition is whether in fact the disputed practice results in unlawful employment discrimination.' The [Act] is intended to prevent discrimination against the physically handicapped based on unfounded stereotyping. That stereotyping is no less harmful to the handicapped employee when it is based on good faith. *Id.* 458 A.2d at 1231. (citations omitted)

We are impressed with this rationale. We will follow it.[3] We hold the trial court erred in finding SIGECO's good faith reliance on its doctor's opinion exonerated it from liability.

The dissenting opinion, while recognizing Leslie's "Catch 22" dilemma, focuses upon the corresponding dilemma faced by the employer. The question has become: who is to suffer the consequences of the employer's physician's erroneous opinion. The dissenting opinion would appear to ig-

**2.** Many of SIGECO's arguments hinge on the assertion that Leslie 1) did not have a handicap or 2) SIGECO did not perceive Leslie's back condition as constituting a handicap. SIGECO argues it never perceived Leslie as handicapped, only unfit for heavy lifting. Being unfit for heavy lifting, SIGECO argues, does not constitute a handicap because it does not interfere with a major life activity. SIGECO argues that, because it did not perceive an unfitness to lift heavy objects a handicap and articulated this as its reason for rejecting Leslie, the burden then shifts to her to establish SIGECO's rejection on these grounds was a mere pretext. This burden shifting procedure is necessary to establish a discriminatory intent. *Indiana Department of Correction v. Indiana Civil Rights Com'n* (1985), Ind.App., 486 N.E.2d 612 *(trans. denied)*.

We are unimpressed by such semantics and procedural gymnastics. This case is more simple than most because SIGECO has consistently admitted it rejected Leslie's application for employment as a meter man solely because of her back condition. There are no complex burden shifting requirements to establish discriminatory intent because such intent has been admitted. Rejection of employment because of a back condition constitutes handicap discrimination. The Commission determined, after an evidentiary hearing, that SIGECO had not proven that Leslie was unable to perform efficiently and safely, at SIGECO'S standards, the duties required by SIGECO of a meter man, at the time that the decision not to hire her was made or at the time of the hearing. Neither the trial court nor we can disturb this agency finding because it is supported by substantial evidence. *Id.* Therefore, the discrimination was unlawful.

**3.** We decline to follow the contra authority of Pennsylvania. The courts of Pennsylvania have held that an employer's good faith reliance on the opinion of a medical expert that a job applicant suffers from a job related disability serves as a defense in an employment discrimination suit. *Action Industries, Inc. v. Commonwealth of Pennsylvania, Human Relations Com'n* (1986), 102 Pa.Cmwlth. 382, 518 A.2d 610 *(appeal denied)*.

nore the enormous penalty imposed upon Leslie—a penalty imposed by handicap discrimination, wrongful, albeit innocently perpetrated. Such a penalty is not mitigated by an employer's good faith.

Moreover, our opinion does not make employers the insurers of their medical expert's opinion. It does however, impose a responsibility upon employers to reevaluate their hiring decisions, based on their expert's opinion, once that opinion is challenged. We note that the "horrendous penalty" suffered by SIGECO could have been obviated, or at least greatly mitigated, had SIGECO reacted promptly and responsibly to Leslie's challenge to their doctor's opinion.

Again, who is to bear the cost of an employer's medical expert's erroneous opinion? We have been charged with the responsibility to construe the Indiana Civil Rights Law broadly in order to effectuate its purpose. We submit it is appropriate for the Act to impose an affirmative duty upon employers, once the opinion of their medical expert is challenged, to double check, and correct when necessary, the decisions based on their medical expert's opinions. We do not believe the Act is to be interpreted to allow employers to sit smugly behind the erroneous opinions of *their* experts, while handicapped persons, and persons perceived with handicaps, who are otherwise qualified, remain underemployed or unemployed.

We reverse and remand with instructions the order of the Indiana Civil Rights Commission be reinstated.

RATLIFF, C.J., concurs.

CONOVER, J., dissents with separate opinion.

CONOVER, Judge, dissenting.

I respectfully dissent. The facts as found by the Indiana Civil Rights Commission itself clearly call for recognition of the "good faith" defense proffered by SIGE-CO, as is the case in Pennsylvania (see *Action Industries, Inc. v. Commonwealth of Pennsylvania,* cited at note 3 of the majority opinion). The legislature did not intend employers who seek only to exercise their legal rights under the Civil Rights Law should be penalized for doing so, as SIGECO was in this case.

Let us first put the Commission's facts in order. Simply stated, Leslie is 5 feet 1 inch tall and weighs 124 pounds. She applied for another job with SIGECO which was unavailable but was told there might be an opening for a meter man. She applied for it, passed some intellectual tests, and took a routine physical required by the company's pre-employment procedures. The meter man job involved heavy lifting on a daily basis. X-rays taken as part of the physical examination showed Leslie suffered from sacralization of her L–5 vertebra, a lower back condition. Leslie's expert, an orthopedist, later confirmed that diagnosis. SIGECO's physician, believing Leslie's back condition disqualified her for a position requiring heavy lifting, reported to SIGECO Leslie was "unfit" for the employment she sought.[1] It was only at that point SIGECO refused to employ Leslie. The parties stipulated from the outset of this litigation SIGECO would have employed Leslie as a meter man if it had not received the "unfit" report from its physician. That stipulation standing alone puts an end to the discrimination question in my opinion, but there is more.

SIGECO had a statutory right to initially refuse employment to Leslie based on its physician's report. IND.CODE 22–9–1–13 at that time provided:

> Sec. 13. (a) The prohibition against discrimination in employment because of handicap does not apply to failure of an employer to employ or to retain as an employee any person who because of a handicap is physically or otherwise unable to efficiently and safely perform, at

---

1. Leslie's expert disagreed, however, believing that condition did not physically disqualify Leslie. That issue, namely, whether Leslie's back condition rendered her unfit for the job she wanted, was the issue tried and determined by the Commission several years after the facts here recited had transpired.

the standards set by the employer, the duties required in that job....

That language does not, however, render employers insurers of the correctness of their experts' opinions. I believe the "good faith" defense SIGECO here asserts is meritorious and should be applied to relieve it from the horrendous penalties assessed by the Commission for employment discrimination which factually did not exist.

If Leslie is faced with a dilemma, ponder the "Catch 22" future employers will face if the "good faith" defense is rejected in Indiana. To avoid the formidable penalties future Commissions may inflict in handicapped discrimination cases, prudence would dictate future employers hire anyone who applies for a vacant job, even if its expert says the applicant is physically unqualified to do the work required. However, if the employer does so, he may face a worker's compensation claim for the very on-the-job injuries its expert predicts will occur if the applicant is hired to do the job for which he is physically unfit. Certainly the legislature did not intend such an incongruous result.

In my opinion the Commission's determination SIGECO's factually innocent conduct was somehow discriminatory from the outset just because its physician's initial opinion was later contested and proven wrong is ludicrous. Neither the law nor the Civil Rights Act sanction the Commission to retroactively apply that finding to make SIGECO's lawful conduct unlawfully discriminatory from the beginning, then deem itself authorized to impose confiscatory penalties for unlawful employment discrimination. The Act targets discrimination in fact, not discrimination resulting from convoluted reasoning. The Commission here has reached absolutely the wrong result and its reversal by the trial court was unqualifiedly justified.

I believe the rule in such cases should be: if a physical examination engenders a qualified expert's opinion an applicant for employment is physically unfit to perform the work required and the employer in good faith refuses to hire the applicant for that reason, the employer has a good defense to a later action, even though the initial expert's opinion is later proven wrong. To hold otherwise endorses confiscatory penalization where none is justified.

For those reasons, I would affirm the trial court.