**INDIANA CIVIL RIGHTS COMMISSION, and N. June Leslie, Appellants,**

v.

**SOUTHERN INDIANA GAS AND ELECTRIC COMPANY, Appellee.**

No. 63S04-9005-CV-328.

Supreme Court of Indiana.

May 10, 1990.

Jacquelyn Thompson, Indianapolis, for appellants.

Arthur D. Rutkowski, James P. Casey, Bowers, Harrison, Kent & Miller, Evansville, for appellee.

ON CIVIL PETITION TO TRANSFER

GIVAN, Justice.

In a 1989 opinion reported at 544 N.E.2d 536, the Court of Appeals reversed the trial court's decision that the Indiana Civil Rights Commission had erred in finding that Southern Indiana Gas and Electric Company (SIGECO) had violated the Indiana Civil Rights Act, Ind.Code § 22–9–1–1 *et seq.*, in refusing employment to appellant N. June Leslie on the ground she was physically incapable of performing the position of "meter man."

Following application for the job of "meter man," Leslie was examined by SIGECO's physician who discovered, during the examination, that she suffered from a congenital spinal defect known as sacralization of the L–5 vertebra and that she therefore was "unfit for heavy work." Leslie expressed surprise at this finding, stating that she had never experienced any back problems, that she had led an active life, and that she had held a position which required lifting objects weighing under one hundred pounds.

However, the evidence in this case shows that Leslie is five feet one inch tall, weighs one hundred twenty-four pounds and has the above-described back condition. The job of "meter man" for which she applied does not consist of reading meters; rather, it primarily involves lifting objects of at least fifty pounds and often as much as one hundred twenty pounds. The job requires the individual to work in and around generators, sliding and pushing 69–kilovolt transformers weighing anywhere from 800 to 1200 pounds. The job also requires work around live wires when lifting heavy equipment as well as the removal of fallen tree branches in restoring and reattaching damaged service lines. In accomplishing this task, the worker would be required to carry fifty-pound ladders as well as to lift one-hundred-twenty-pound transformers during stormy weather.

Dr. Boyle, SIGECO's doctor, testified that even without the back condition he would have found Leslie physically unqualified for this job because of the heavy lifting involved. When Leslie discovered this situation, she sought a second medical opinion from Dr. Milan D. Gerlanc. Dr. Gerlanc's examination verified the back condition found by Dr. Boyle. However, Dr. Gerlanc concluded that Leslie had no greater problem than anyone having a "normal" back. In fact, he stated that her back was more stable at the affected area than a "normal" back.

A great deal of space in the briefs and in the majority opinion of the Court of Ap-

peals is used to discuss the question of whether Leslie was a handicapped person. One certainly could say from the doctors' findings that she might not be classified as a "handicapped" person. This issue is important to make the determination as to whether Leslie comes under the Civil Rights Act. For purposes of this opinion, we will assume that she does.

Nevertheless, as recognized by the Court of Appeals' majority opinion, the statute expressly states that in addition to protecting minorities and the handicapped, "[i]t is also the public policy of this State to protect employers ... from unfounded charges of discrimination." Ind.Code § 22–9–1–2(c).

Indiana Code § 22–9–1–13(a) states:

"The prohibition against discrimination in employment because of handicap does not apply to failure of an employer to employ or to retain as an employee any person who because of a handicap is physically or 'otherwise unable to efficiently and safely perform, at the standards set by the employer, the duties required in that job."

In undertaking to protect those covered by the statute, including the handicapped, one need only consider a few hypothetical situations to realize the limited scope within which the statute must apply. It of course would be unthinkable to require an airline to employ a blind person as a pilot, or to require a professional basketball team to hire a person five feet two inches tall to play center on that team, or, as in the case at bar, to require SIGECO to employ a five feet one inch, one hundred twenty-four pound person with a congenital back condition to undertake a job requiring the above-described heavy lifting.

In this case, the Indiana Civil Rights Commission made a finding which flies in the face of any reasonable application of the statute. Their finding No. 5 was: "An employer who has refused a person employment because of a physical condition is estopped from denying that that person's physical condition is a substantial disability." It should be obvious to anyone that size and weight are physical conditions and

that a job which a prospective employer might have could not be effectively and safely performed if a person was either too large or too small or not strong enough to perform the task required. Although one could say they did not have the ability to perform the task because of their diminutive size or strength, it does not follow that such condition is a "disability" within the definition of a "handicapped" person.

The majority opinion in the Court of Appeals cites the case of *Dairy Equipment Co. v. Department of Industry, Labor and Human Relations* (1980), 95 Wis.2d 319, 290 N.W.2d 330. This case concerned an employer who had terminated the worker immediately upon discovering, three days after hiring him, that he had only one kidney. The Wisconsin Supreme Court held the worker was handicapped and thus protected against discrimination by state law.

They also cite *Barnes v. Washington Natural Gas Company* (1979), 22 Wash. App. 576, 582, 591 P.2d 461, 465, which states that the law against discrimination based on handicap would not deny protection to "those who are discriminated against in the same way because they are only thought to have handicaps." The majority then states they are impressed by the rationale in both the Wisconsin and Washington cases. We have no quarrel whatever with either of those cases but do not perceive that they in any way govern the facts in the case at bar.

Leslie's small size, coupled with her back condition, simply places her in a category of persons whom, SIGECO was well within their rights in finding, could not efficiently and safely perform the duties required in the job for which she applied. By the very language of the statute above quoted, it is apparent that there is no intention on the part of the legislature to require an employer to employ a person who simply for whatever reason, handicapped or otherwise, cannot reasonably perform the job offered.

In his dissenting opinion in the case at bar, Judge Conover makes the following statement:

"I believe the rule in such cases should be: if a physical examination engenders a qualified expert's opinion an applicant for employment is physically unfit to perform the work required and the employer in good faith refuses to hire the applicant for that reason, the employer has a good defense to a later action, even though the initial expert's opinion is later proven wrong. To hold otherwise endorses confiscatory penalization where none is justified." 544 N.E.2d 536, at 542.

We wholeheartedly endorse Judge Conover's statement in this regard although we hasten to point out that in the case at bar we find nothing to indicate that the initial expert opinion was ever proven wrong.

The opinion of the Court of Appeals is set aside and the trial court is affirmed.

SHEPARD, C.J., and PIVARNIK, J., concur.

DeBRULER, J., dissents with separate opinion.

DICKSON, J., concurs in result without separate opinion.

DeBRULER, Justice, dissenting.

Equal opportunity is a civil right which belongs to all citizens. The practice of denying equal opportunity solely by reason of "race, religion, color, sex, handicap, national origin or ancestry" is forbidden. I.C. 22-9-1-2. All are in danger of this practice, as no person lacks personal traits and background from which they may be, at any moment, judged by another to fall within one of these categories; that is, anyone may be made to suffer loss of equal opportunity because of that person's race, religion, color, sex, handicap, national origin or ancestry through stereotypic thought processes, lack of information, and simple prejudice. "The promotion of equal opportunity ... through reasonable methods," the protection of those who must make judgments of others in parcelling out benefits from "unfounded charges" of engaging in the forbidden practice, and the requirement that the civil rights law be "construed broadly to effectuate its purpose" are major provisions of the charge and charter of the Civil Rights Commission. I.C. 22-9-1-2(b), (c) and (f).

The Act provides:

"Discriminatory practice" means:

the exclusion of a person from equal opportunities because of race, religion, color, sex, handicap, national origin, or ancestry[.]

22-9-1-3($l$)(1). It also provides:

"Handicap or handicapped" means the physical or mental condition of a person that constitutes a substantial disability.

22-9-1-3(q). It is the practice of denying equal opportunity to properly qualified persons by reason of the race, religion, color, sex, handicap, national origin or ancestry of such person which is forbidden. When such a practice is employed, the judgment-maker artificially and illogically limits consideration of relevant traits and background. In my opinion, this statute calls for the Commission, and ultimately the courts, to condemn such practices and processes, irrespective of whether their post-judgment hearings demonstrate that the use of lawful practices and processes would have had the same result. On this basis, I agree in the result reached by the Commission and the majority of the Court of Appeals that the Commission should be open to all persons who have been denied employment on the basis of a physical or mental disability to challenge the practice and process by which they have been judged unqualified.

In this case involving Leslie, SIGECO received a form report from its doctor which reported that she was a normal, thirty-five-year-old woman, but that a spinal x-ray showed that the lowest lumbar vertebra was fused to the sacrum. The x-ray and a physical examination by this company doctor were required by the company. The doctor had checked a box which indicated that she was unfit for heavy work. Upon the basis of this report, SIGECO rendered its judgment that she was not qualified for the job of meter man. SIGECO has stipulated to these facts and events in these proceedings. Leslie challenged the

report, citing her traits and background for consideration. SIGECO took no further step. Another woman applicant was hired to be the meter man.

Judge Miller for the Court of Appeals was of the opinion that the duty imposed upon employers in these circumstances by the Act is to double-check their doctor's opinions. I agree. A non-discriminatory hiring practice would not restrict consideration to the routine report of a company doctor. The judgment of the trial court should be reversed and the order of the Commission reinstated.