**INDIANA CIVIL RIGHTS COMMISSION, Alpha Blackburn as Chairman of the Indiana Civil Rights Commission, and Debra Salais, Appellants–Defendants,**

v.

**DELAWARE COUNTY CIRCUIT COURT, Appellee–Plaintiff.[1]**

No. 49A02–9309–CV–487.

Court of Appeals of Indiana, Second District.

Nov. 17, 1994.

---

1. Both parties include the Honorable Steven R. Caldemeyer as an appellee in this matter. The Commission, however, dismissed Salais' complaint against Judge Caldemeyer. Because that dismissal was not challenged, Judge Caldemeyer is not a party to this appeal. His actions, however, remain the subject of this litigation and will determine whether liability can be imposed on the remaining appellee.

542

Jacquelyn Thompson, Indianapolis, for appellants.

Jennifer L. Graham, Price & Barker, Indianapolis, for appellee.

## OPINION

KIRSCH, Judge.

Debra Salais (Salais) and the Indiana Civil Rights Commission (the Commission) appeal the trial court's Findings of Fact, Conclusions of Law and Order which vacated the Commission's determination that the termination of Salais' employment amounted to handicap discrimination. They raise several issues on appeal, which we restate as follows:

I.   Whether the appellee's failure to timely file objections to the Administrative Law Judge's Recommended Order deprived the trial court of jurisdiction to determine the appellee's petition for judicial review.

II.  Whether the trial court erred by determining that the Commission's finding of handicap discrimination was not supported by substantial evidence, and was arbitrary, capricious, and an abuse of discretion.

III. Whether the trial court exceeded the scope of judicial review when it entered factual findings which conflicted with the factual findings made by the Commission.[2]

## FACTS

Following a seven-day hearing, the Administrative Law Judge (ALJ) prepared extensive findings of fact and conclusions of law which, in all respects pertinent to this appeal, the Commission adopted as its final order.[3] The facts contained in those findings may be summarized as follows:

2.  Salais and the Commission raise additional issues concerning judicial immunity and the identity of the proper parties to the lawsuit. Because our holding on the issue of handicap discrimination is dispositive, we do not reach such issues.

Salais was employed as a supervisor at the Delaware County Juvenile Detention Center operated by the Delaware County Circuit Court, Juvenile Division. The Honorable Steven R. Caldemeyer presided over the juvenile court. The supervisors at the Detention Center were responsible for overseeing juvenile detainees, not supervising other employees. Their primary responsibilities were to see that the detainees adhered to a predetermined schedule and obeyed the Center's rules, referred to as the "dos and don'ts." The Center supervisors reported to the deputy chief probation officer, who, at the time of Salais' termination of employment, was Carl Scheib. The deputy chief reported to the chief probation officer, who at all relevant times was David Clevenger.

At all times during her employment as a supervisor, Salais suffered from a condition known as bipolar disorder (formerly known as manic-depression) which is characterized by mood swings. Dr. George Teaboldt was Salais' treating psychiatrist. Dr. Teaboldt was treating Salais' condition with medication in an effort to moderate her manic and depressive moods. Arriving at an appropriate dosage of medication was an ongoing process requiring continual adjustments. In October of 1983, Dr. Teaboldt adjusted the level of Salais' medication so that during the last week of her employment with the Center, Salais was taking a substantially reduced dosage of one of her medications.

The events underlying the present litigation occurred on October 20, 1983. At approximately 9:00 p.m., two male detainees got into an altercation in violation of the "dos and don'ts." Salais assigned isolation time to both detainees, but one of them refused to comply. Salais argued with this detainee and called him "a jerk and a son of a bitch." Salais physically confronted the boy, grabbed him by the arm and led him toward his room. The boy was upset by the incident, and when left unsupervised in his room, he struck either the wall or door and injured his hand.

3.  The Commission modified certain of the ALJ's findings regarding calculation of damages. The modifications are not material to this appeal.

In addition, he tied a bed sheet around his neck as if to commit suicide.

Chief Probation Officer Clevenger was called to the Center. He talked with Salais who admitted that she, in her own words, "had lost it." During her conversation with Clevenger, Salais spoke harshly about the detainee and, in the presence of other staff members, was disrespectful to Clevenger. Salais later conceded that her behavior toward Clevenger was "way out of line." Clevenger did not seek Salais' termination, but asked her not to report for her shift the next day.

Salais subsequently advised Clevenger of her bipolar disorder. When given the option of taking a medical leave of absence or being discharged, Salais chose the medical leave. During this leave, Dr. Teaboldt and others continued to treat Salais. Eventually, the Center was contacted and informed that Salais was ready to return to work. On May 11, 1984, a meeting was held to discuss the situation. The meeting was attended by Salais, Dr. Teaboldt, a social worker, Clevenger and Deputy Chief Probation Officer Scheib. At the meeting, Dr. Teaboldt explained that Salais' condition was "contained not controlled." While Dr. Teaboldt could not guarantee that an incident similar to that of October 20, 1983 would not recur, he stated that he would be very surprised if there was another outburst. No decisions were made at the meeting; rather, the Center representatives emphasized that Judge Caldemeyer would make the final decision.

On May 14, 1984, Clevenger advised Judge Caldemeyer of the results of the May 11 meeting, including Dr. Teaboldt's conclusions regarding Salais' condition. Based upon this information, Judge Caldemeyer advised Clevenger that Salais was not to return to work. Judge Caldemeyer explained that the situation was too "touchy" and that they might be exposing themselves to potential legal liability. Salais was subsequently informed of Judge Caldemeyer's decision.

Focusing on the information existing at the time Salais was discharged, the Commission concluded that the only available expert opinion was that Salais' condition was not related to her ability to perform her duties as a Center supervisor, and that consequently, Salais' condition constituted a substantial disability.[4] The Commission also determined that Salais' termination was based solely upon her condition rather than upon the events occurring on October 20, 1983. The Commission ultimately concluded that Salais was unlawfully terminated from her employment based upon handicap discrimination.

The appellee timely filed a petition for judicial review of the Commission's determination of handicap discrimination.[5] The trial court entered findings of fact and conclusions of law in which it determined that the Commission erred in finding Judge Caldemeyer engaged in handicap discrimination. Salais and the Commission appeal the trial court's determination.

## DECISION

### I. Trial Court's Jurisdiction

█ Salais first contends that the trial court lacked jurisdiction to entertain the appellee's petition for judicial review because the appellee failed to timely object to the ALJ's recommended findings and conclusions as required by IC 4–21.5–3–29(d) (1986 Supp.) and IC 4–21.5–5–4(b) (1986 Supp.). As a general matter, the failure to file written objections to a hearing officer's recommended findings of fact, conclusions of law, and order, results in waiver of the right to

---

4. At the time the Commission heard this matter, the term "handicap" was statutorily defined in the employment context as "the physical or mental condition of a person that constitutes a substantial disability unrelated to the person's ability to engage in a particular occupation." IC 22–9–1–3(q) (1986 Supp.). The statute has since been amended wherein the definition has remained, but the term "disability" replaces the term "handicap." *See* 1993 Ind.Acts, Pub.L. 23–1993 § 131.

5. Consistent with the statute in effect at the time it sought judicial review, the appellee filed its petition with the appropriate court. IC 4–21.5–5–2 and –6 (1987 Supp.). We note, however, that for final appealable orders issued by the Commission on or after July 1, 1994, judicial review may be sought directly in this court. 1994 Ind.Acts, Pub.L. 14–1994 §§ 7, 11.

judicial review. *See Indiana Civil Rights Comm'n v. Kidd & Co.* (1987), Ind.App., 505 N.E.2d 863, 867, *trans. denied* (employer's failure to challenge Civil Rights Commission's conclusion regarding availability of work when employer filed objections to Commission's findings resulted in waiver of the issue). This requirement provides the administrative agency with the first opportunity to correct any errors that may have been made. *Kennedy v. St. Joseph Memorial Hosp.* (1985), Ind.App., 482 N.E.2d 268, 275.

■ The record in the present case discloses that the ALJ issued recommended findings and conclusions on June 29, 1987. The Commission granted both parties' motions to extend the time to file objections to August 24, 1987. On August 21, 1987, within the time for filing objections, the appellee filed a second motion to enlarge time based upon the fact that the transcript of oral testimony was not yet completed. Salais objected to this second motion, claiming that the unavailability of the transcript was due to the appellee's unreasonable delay in authorizing the court reporter to proceed to prepare it. On August 31, 1987, after the time for filing objections expired and prior to the issuance of its findings, the Commission denied the appellee's motion, finding that the appellee failed to establish just cause for an extension of time.

On September 15, 1987, the appellee filed a motion to reconsider the denial of its request for an extension of time. Appellee's counsel elaborated on the reasons for the unavailability of the transcript, and explained that authorization from their clients was delayed because approval for continuing and funding further proceedings had to be obtained from the Delaware County Commissioners at a duly held meeting. Appellee's counsel further explained that once the approval was obtained, the court reporter was immediately authorized to begin preparation of the transcript. The appellee's motion to reconsider also included proposed objections to the ALJ's recommended findings and conclusions. Even though it had not yet entered its findings, the Commission denied the appellee's motion to reconsider.

We find that on the facts before us, the Commission's denial of the appellee's second motion for extension of time and motion to reconsider was arbitrary, capricious, and an abuse of discretion. The hearings in this matter spanned seven days, and resulted in an 1800–page transcript of oral testimony. It was reasonable for the appellee to take some time to consider whether it wanted to incur the expense of having the transcript prepared. In addition, some time was necessary for appellee's counsel to review the seven-volume transcript in order to prepare appropriate objections to the ALJ's recommended findings and conclusions. The decision to pursue further proceedings, the authorization to proceed, the preparation of the transcript, the review of the transcript, and the formulation and filing of objections, were all accomplished within 90 days of the issuance of the ALJ's proposed findings and conclusions. Under the circumstances, 90 days was a reasonable time within which to accomplish these many tasks and the appellee should have been allowed to do so. The Commission did not issue its findings until October 16, 1987. There was no prejudice to Salais or the Commission resulting from the belated objections. Consequently, we find that the appellee did not waive the issues contained in its objections to the ALJ's proposed findings and conclusions, and thus, the trial court had jurisdiction to entertain the petition. *See Crutcher v. Dabis* (1991), Ind. App., 582 N.E.2d 449, 450, *trans. denied* (failure to include issue in petition for judicial review, when petition was accompanied by motion to extend time to file agency record, did not result in waiver of the issue because the issue was included in a subsequent memorandum filed after petitioner received transcript of agency record).

## II. Handicap Discrimination

■ A trial court may grant relief on judicial review upon finding that the agency action is: 1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; 2) contrary to constitutional right, power, privilege, or immunity; 3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; 4) without observance of procedure required by law; or 5) unsupported by substantial evidence. IC

4–21.5–5–14 (1988 Ed.); *see also Indiana Dep't of Correction v. Indiana Civil Rights Comm'n* (1985), Ind.App., 486 N.E.2d 612, 614, *trans. denied.* The role of this court on appeal is to determine whether the Commission's findings of fact and conclusions of law have a reasonably sound basis of evidentiary support. *Indiana Civil Rights Comm'n v. City of Muncie* (1984), Ind.App., 459 N.E.2d 411, 417. We are governed by the presumption that an agency's decision is correct in view of its expertise, and we are bound by the agency's findings of fact if supported by substantial evidence. *City of Bloomington v. Delta Treatment Center* (1990), Ind.App., 560 N.E.2d 556, 558; *Hamilton County Dep't of Pub. Welfare v. Smith* (1991), Ind.App., 567 N.E.2d 165, 167–68. Despite the great weight afforded an administrative body's findings, an agency's determination of ultimate facts, defined as factual conclusions derived from basic facts, is subject to a reasonableness standard of review. *Ali v. Greater Ft. Wayne Chamber of Commerce* (1987), Ind.App., 505 N.E.2d 141, 143. Because findings of ultimate fact represent inferences drawn by the agency, they are not subject to scrutiny for evidentiary support in the record; the reasonableness of the agency's inference is a question of law appropriate for judicial determination. *L.S. Ayres & Co. v. Indianapolis Power & Light Co.* (1976), 169 Ind.App. 652, 664–65, 351 N.E.2d 814, 823.

■ IC 22–9–1–3(*l*) prohibits discrimination in employment based upon a person's handicap. "It is also the public policy of this state to protect employers ... from unfounded charges of discrimination." IC 22–9–1–2(c) (1982 Ed.). To that end, the statute further provides:

> "The prohibition against discrimination in employment because of handicap does not apply to failure of an employer to employ or to retain as an employee any person who because of a handicap is physically or otherwise unable to efficiently and safely perform, at the standards set by the employer, the duties required in that job."

IC 22–9–1–13(a) (1986 Supp.). The civil rights law protects both a person's right to equal opportunity in employment, and an employer's right to make reasonable employment decisions in furtherance of the safe and efficient operation of the employer's business. *See Indiana Civil Rights Comm'n v. Southern Indiana Gas and Elec. Co.* (1990), Ind., 553 N.E.2d 840, 843 (referred to herein as *"SIGECO"*) (DeBruler, J., dissenting). The Commission and the reviewing courts must broadly construe the civil rights law to determine whether an employer has engaged in a discriminatory practice. IC 22–9–1–2(f). Such a broad construction necessarily includes a balancing of the potentially competing interests of employer and employee.

Indiana courts have had one occasion to interpret the scope of IC 22–9–1–13(a). In *SIGECO*, the five-foot-one-inch tall, 124-pound complainant (Leslie), was denied employment as a "meter man." As a part of the application process, a company doctor examined Leslie and determined that she had a back condition which rendered her "unfit for heavy work." 553 N.E.2d at 841. SIGECO refused Leslie employment because "she was physically incapable of performing the position of 'meter man.' " *Id.* Leslie obtained a second medical opinion which confirmed Leslie's back condition, but concluded that "Leslie had no greater problem than anyone having a 'normal' back." *Id.* Our supreme court affirmed the trial court's determination that the Commission erroneously found SIGECO to have engaged in handicap discrimination. In so doing, the court endorsed a good faith defense for Indiana employers as follows:

> "[I]f a physical examination engenders a qualified expert's opinion an applicant for employment is physically unfit to perform the work required and the employer in good faith refuses to hire the applicant for that reason, the employer has a good defense to a later action, even though the initial expert's opinion is later proven wrong. To hold otherwise endorses confiscatory penalization where none is justified."

*Id.* at 843 (citation omitted).

■ While the present case involves a mental condition rather than a physical condition, the same defense applies. The term "handicap" is defined in the employment context to include either the physical or mental

condition of a person. IC 22–9–1–3(q). Because the good faith defense applies to claims of handicap discrimination generally, then, by definition, it must apply to both physical and mental conditions.

The present case is complicated by the equivocal nature of Dr. Teaboldt's opinion of Salais' condition. Judge Caldemeyer did not have the benefit of a "qualified expert's opinion [that] an applicant for employment is physically [or mentally] unfit to perform the work required" as in *SIGECO*. 553 N.E.2d at 843. Rather, Judge Caldemeyer had to draw his own conclusions from ambiguous statements such as Salais' condition being "contained not controlled."

At the Commission hearing, Judge Caldemeyer gave the following explanation for his decision to terminate Salais' employment:

> "As I recall, David [Clevenger] said that her own doctor said that he could not predict that she was stable enough to work there and he could not promise that there would not be another incident next week, next month or next year. And I said, well, the touchy situation is over. That's it. There is no way that we can take a chance to have her work if harm could befall any of the detainees at the detention facility in light of the fact that we are already put on notice she is dangerous because there has been one incident.
>
> ... Had he given a report saying this looks like an isolated incident, that we treated her for this or this was wrong and she looks like she's recovered to me, if her doctor had said that, she'd have been retained."

*Record, Volume X* at 188–89. Conversely, the Commission made the following findings regarding Dr. Teaboldt's conclusions:

> "31. During [the May 11, 1984] meeting, Dr. Teaboldt described Salais' condition as 'contained not controlled'. He confidently asserted, nonetheless, that she could return to doing any work she had been capable of before the leave of absence. Though he could not guarantee that no incident like the one leading to the leave would recur, he did assert that he would be very surprised if a blow-up ever occurred again. (Dr. Teaboldt could not guarantee that a

'normal' person would not be involved in such an incident.)

> . . . .
>
> 39. At the time that the discharge decision was made, Salais' mental condition was, according to the *only* existing expert opinion, *not* related to her ability to engage in the occupation of a Supervisor at the Detention Center."

In making his decision, Judge Caldemeyer focused on Dr. Teaboldt's predictions of Salais' future functioning in a supervisor's position. The fact that Dr. Teaboldt could not guarantee that Salais would not have another outburst was enough to convince Judge Caldemeyer that Salais was mentally unfit for the position. The Commission, on the other hand, chose to focus on Dr. Teaboldt's statements regarding Salais' functioning at the time the discharge decision was made.

The Commission found that:

> "40. The fact that Respondents have now found experts who opine that Salais' condition was related to her ability to engage in that occupation does not alter the fact that no such expert opinion was delivered prior to the decision. Thus, the discharge must have resulted from an unspecific fear of mental illness or, at least, a fear of Bipolar Disorder."

Judge Caldemeyer was entitled to present evidence that his interpretation of the available medical information was reasonable and made in good faith. Any other conclusion would defeat the intent behind IC 22–9–1–13(a) which allows an employer to refuse employment to a person "who simply for whatever reason, handicapped or otherwise, cannot reasonably perform the job offered." *SIGECO*, 553 N.E.2d at 842. Consistent with this intent, we hold that when an employer articulates a non-discriminatory reason for acting upon information concerning an employee, then the employer is entitled to defend that action by presenting subsequently acquired expert opinion supporting such reason to prove that the employer acted in good faith.

Whether an employee's disability prevents the efficient and safe performance of the duties required by the job must be

determined by looking to both the nature of the disability and the nature of the job. What may constitute discrimination in one setting will not in another.

Here, the supervisor's job held by Salais involved interacting with juvenile detainees eight hours a day for five days a week. The demanding, stressful and potentially volatile nature of the job is demonstrated by the near tragic events of October 20, 1983.

It is against this background that Judge Caldemeyer's decision not to retain Salais must be viewed. Knowing the nature of the job and having responsibility for the safety of the juvenile detainees, Judge Caldemeyer sought a medical opinion that allowing Salais to return to work would not pose an unreasonable safety risk. Rather than obtaining such an opinion, he was presented with information that Salais' own doctor described her condition as contained, but not controlled. He was told that the doctor could not guarantee that there would not be a recurrence of the incident. On the basis of this information, Judge Caldemeyer determined that Salais' employment should be terminated. The reasonableness of this decision was confirmed by the expert opinions of two psychiatrists specializing in the treatment of bipolar disorders both of whom stated that Salais' mental condition prevented her from safely and efficiently performing the job of detention center supervisor. The Commission did not challenge the validity of such opinions, but, rather, erroneously disregarded such evidence because it was not available at the time of the termination decision. By doing so, the Commission ignored Judge Caldemeyer's legitimate defense that he acted in good faith rather than in a discriminatory manner. The Commission's finding of handicap discrimination was arbitrary, capricious, an abuse of discretion, and contrary to law.

### III. Scope of Judicial Review

■ We agree with Salais' contention that the trial court exceeded its review function when it made its own findings of fact which conflicted with the Commission's. *See Smith*, 567 N.E.2d at 168 (reviewing court may not reweigh evidence or substitute its judgment for that of agency). Nonetheless, in reaching our legal conclusion that the

Commission erred in finding handicap discrimination, we relied exclusively on the Commission's findings of fact as set forth above. Thus, the trial court's actions regarding the factual findings were of no consequence in the resolution of the legal issues presented.

Affirmed.

FRIEDLANDER, J., concurs.

SULLIVAN, J., concurs in result.